## Richmond.

City of Newport News v. Scott's Administratrix.

March 23, 1905.

Absent, Cardwell, J.

1. STREETS—*Opening to Public Use—Unimproved Streets—Unsafe Condition.*—Where a street in a city has been dedicated to public use, and has been accepted by the city as one of its public streets, and is in daily use by numbers of people, including a large number of children, with the full knowledge and acquiescence of the city, is lighted by lights maintained at the expense of the city, is underlaid by a sewer pipe owned, controlled, and maintained by the city, and is under the supervision, management and control of the city, this is sufficient opening of the street to the public to render the city liable for an injury resulting from leaving a large hole open and exposed in the street, although the street was not improved with sidewalks, or otherwise than as stated above.

2. STREETS—*Unimproved—Unsafe Condition—Negligence.*—A city is liable for the death, by drowning, of a small child in a large hole filled with water knowingly left open and exposed in one of its unimproved public streets in use by the public as stated above.

3. NEGLIGENCE—*Injury to Infant—Negligence of Mother.*—Whether or not it is contributory negligence on the part of a mother to permit her child, four and one-half years of age, to stray from her house for a period of fifteen minutes into the streets of a city, where it is injured or killed, is a question for the jury under proper instructions from the court. It cannot be said to be negligence as a matter of law.

Error to a judgment of the Corporation Court of the city of Newport News, in an action of trespass on the case, wherein

the defendant in error—who was suing for her own benefit—was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the facts. The ruling of the trial court on the instruction asked appears below.

The plaintiff moved the court to instruct the jury as follows:

### Plaintiff's Instructions.

1.

"The court instructs the jury that the defendant city is charged with the duty of keeping its streets in a reasonably safe condition for the use of the public to the limits of the territory embraced in its charter, and if they believe, from the evidence, that there was a dangerous hole in the street of the defendant city, as alleged in the declaration, in which the plaintiff's intestate was found dead, and that said hole had so remained for such length of time that, by the exercise of reasonable diligence it might have been discovered by the defendant city in time for it to take reasonable precautions to prevent injury to persons lawfully on the street, notice thereof will be imputed to the defendant, and its liability for the death of plaintiff's intestate, if caused by falling into said hole and being drowned on account of the failure of the defendant to perform its said duty, is the same as if the city had actual notice."

2.

"The court instructs the jury that if they believe, from the evidence, that the officers or servants of the defendant city, charged with the duty of seeing to the keeping of its streets in

order, either knew, or by the exercise of reasonable diligence, might have known, of the existence of the hole in the street in which the plaintiff's intestate was found, in time to take such precautions as were reasonable and prudent to prevent persons lawfully upon the street from falling therein, and failed to do so; and if, in consequence of such failure, the plaintiff's intestate fell into said hole and was drowned, then the defendant city is liable, and they should find for the plaintiff, unless the jury shall believe, from the evidence, that the plaintiff was guilty of negligence which contributed directly to the drowning of the deceased."

3.

"The court instructs the jury that children have a right to be upon the public streets of a city, and the city is charged with the duty of exercising reasonable care in keeping its streets in such repair and order as the safety of children and others, who might reasonably be expected to be lawfully upon it, may reasonably require; and a failure to perform this duty will render the city liable in damages from injuries resulting therefrom, unless such injuries were the direct result of the contributory negligence of the plaintiff."

4.

"The court instructs the jury that whilst the same amount of vigilance to see that streets are kept and maintained in a reasonably safe condition is not required of a city upon a street infrequently used in a sparsely settled portion of the city, as is required on a much travelled highway running through a thickly settled portion of the city, yet if a street within the limits of a city, whether improved or not, is in common use by the public, acquiesced in by the city, it is the duty of the

city to keep it in a reasonably safe condition for said public use as the character and extent of that use reasonably requires."

5.

"The court instructs the jury that if they believe, from the evidence, that the hole in which the deceased child, Jacob T. Scott, was found dead on July 10, 1903, was upon Virginia avenue, within the city of Newport News; that said avenue at that place was under the management and control of the said city; that it was left open and exposed by said city to such use, for travel, as the public chose to make of it, and if they further believe, from the evidence, that children lived near by, and frequented that locality, and were in the habit of playing upon said avenue at that place, with the knowledge of the city officials having charge and control thereof, then whether the said Virginia avenue had been actually opened and improved as a public street or not, it was its duty not to permit holes and excavations to be made or to remain therein which were dangerous to children and into which they were likely to be enticed; and if they further believe, from the evidence, that the said hole in which deceased was found dead was a dangerous place, attractive to children, and that they were likely to be enticed and allured into playing about and in said hole and of being drowned; and if they further believe, from the evidence, that the defendant city either knew, or by the exercise of reasonable diligence, should have known, of the existence of said hole in time for it to take reasonable precaution to prevent children from getting into it, and that it failed so to do, then the defendant was guilty of negligence; and if they believe, from the evidence, that by reason of said negligence the deceased got into said hole and was drowned, the defendant city is liable in damages therefor, unless the

jury shall believe, from the evidence, that the plaintiff was guilty of negligence also which directly contributed to the drowning of the child."

6.

"The court instructs the jury that if they believe, from the evidence, that the plaintiff is entitled to recover in this action, then, under the statute law of Virginia, they may award damages as to them may seem fair and just, not exceeding ten thousand dollars."

7.

"The court instructs the jury that it is not necessary, in order to charge the city with the duty of maintaining a piece of land within its limits in reasonably safe condition for public use, that it should be opened in the sense of being worked or improved, but that if such a piece of land has been taken charge of and treated as a public street by the city, and the public have been passing over it with the knowledge and acquiescence of the city, then the city was charged with the duty of keeping it in such reasonably safe condition as the use which was so being made of it reasonably required."

8.

"The court instructs the jury that section 1014 of the Code of Virginia, referred to in the ordinance of the city of Newport News, approved on the 16th day of November, 1898, and introduced in evidence in this case, provides as follows:

"Sec. 1014. Survey and plan of cities and towns to be made and recorded; effect of plan as evidence.—The council of every city and town shall (unless it has already been done) cause to be made a survey and plan of such city or town,

showing distinctly each lot, public street and alley therein, the size and number of the lots and the width of the streets and alleys, with such explanations or remarks as they may deem proper.   The said plan, when approved by the council, shall be entered in some one of their books, and afterwards recorded, in the case of a city, in the clerk's office of the Corporation or Hustings Court of such city, and in case of a town, in the clerk's office of the court of the county in which said town, or the greater part thereof, is, and when so recorded, shall remain in said office.   Said plan shall be evidence of the boundaries of the said lots, streets and alleys."

To which the court, on motion of the defendant, added as follows:

"But this alone does not make the city liable for the condition of Virginia avenue at the point in question."

9.

"The court instructs the jury that no previous negligence of the mother, if she were guilty of any, in permitting the deceased to play near the place where the accident occurred, can affect her right to recover in this case.   She must have been guilty of negligence on that occasion which directly contributed to the death of her child."

And the court gave instructions 1, 2, 3, 4, 5, 6, 7 and 9, asked for by the plaintiff, and No. 8 amended as aforesaid.

And the defendant moved the court to instruct the jury as follows:

*Defendant's Instructions.*

1.

"The court instructs the jury that a municipal corporation

is not an insurer against accidents upon its streets and side-walks; the measure of duty required of it is that it shall keep and maintain at all times the streets and sidewalks which are open to and used by the public in a reasonably safe condition for travel in the ordinary· modes, and if you believe, from the evidence, that the part of Virginia avenue, between Forty-first and Forty-second streets, so open to and used by the public, was at the time of the alleged accident in such reasonably safe condition, then the city has performed its duty in that regard."

2.

"The court instructs the jury that the city is not required to open for travel new streets in advance of public needs, even though the necessary land required therefor may have been dedicated by its owners, and accepted by the city for the pur-poses of a highway, and so shown on a city map. And until such time as it has been opened and used as a highway no liability rests upon the city for failure to keep and maintain the said land· so dedicated, accepted, and merely existing as a street on the city map, in a reasonably safe condition for travel thereon as a highway."

3.

"The court instructs the jury that where there is little or no travel upon a highway a city is not necessarily bound to open, prepare and maintain in a reasonably safe condition for travel the entire width of the street, and that it has done its entire duty when it has wrought and kept in a condition rea-sonably safe for ordinary travel a highway of sufficient width to reasonably accommodate travellers to and fro over such highway. And if they believe, from the evidence, that only a portion of Virginia avenue at that place where the accident is

alleged to have occurred had been used for travel and accepted as a highway, and not its entire width, and the part actually used and accepted and a reasonably safe distance therefrom was, at the time of the alleged accident, in a reasonably safe condition for travel thereon, then there is no liability upon the city for failure to provide a safe highway for travel."

4.

"The court instructs the jury that a city is not liable to trespassers who go without license or invitation upon its land, though unmolested, for mere pleasure, or to gratify curiosity, and there meet with an injury through the city's negligent management of its property. The same rule in this case applying to adults and children, and if you believe, from the evidence, that the place where the accident is alleged to have occurred had never been opened and used as a street and was sufficiently far removed from any travelled way as that one rightfully using such travelled way would not, without fault on his part, or by unintentional deviation or an accidental misstep, fall into the alleged defect, then no duty rests upon the city to render that part of its land safe, and you will find for the city."

5.

"The court instructs the jury that if they believe, from the evidence, that the place where the accident is alleged to have occurred to the plaintiff's deceased had not been opened to and used by the public as a thoroughfare, then the city was not required to keep and maintain it in condition for travel by the public as a highway."

6.

"The court instructs the jury that a city is not an insurer

against accidents upon its streets, and in order to hold it liable for defects therein it must be shown that the city had actual or constructive notice of the defect, which caused the accident, and had reasonable time to repair it or guard against any accident that might reasonably be expected to result therefrom, after having such notice, and that by constructive notice is meant that the defect by which the injury is alleged to have been caused had been so open and notorious and continued for such a length of time before the injury that the city, by its proper officers, exercising reasonable diligence, should have acquired knowledge of such defect And if, therefore, the jury believe, from the evidence, that the city had no actual knowledge of such defect, and that the defect had not remained in said street and been so open and notorious for a sufficient length of time so that the city, by the exercise of such reasonable diligence, should have known of its existence, taking into consideration the amount of travel and use made of the highway at that point, and its distance from the much used and travelled portion of the city, and had time to repair the same, or take reasonable precautions to prevent such injury as might reasonably be expected from such defect, then they will find for the defendant."

7.

"The court instructs the jury that if they believe, from the evidence, that Mrs. Scott, the mother and administratrix of Jacob Scott, deceased, knew of the existence of the hole in which he was found dead, and that it was a dangerous place for children to go to and play around, and knew that he exposed himself to such danger by going to and playing around such hole, and made no effort to prevent him from exposing himself to such danger, and that in consequence thereof he lost his life by exposing himself to such danger in going to and playing

around said hole, she was guilty of contributory negligence and cannot recover in this action."

8.

"The court instructs the jury that Jacob Scott's want of responsibility for negligence cannot be invoked to maintain this action, if you believe, from the evidence, that his mother was negligent in not endeavoring to prevent him from being exposed to the dangers alleged in the declaration, and that such negligence on her part contributed directly to the accident which caused his death, you will find for the defendant city."

9.

"The same amount of vigilance to see that streets are kept and maintained in a reasonable safe condition is not required of a city upon a street unfrequently used in sparsely settled portions of a city as is required on a much travelled highway running through a thickly settled portion of the city, and if you believe, from the evidence, that the inspection, care and attention given by the city to the street where the accident is alleged to have occurred was, under all the circumstances, reasonably sufficient to keep it in a reasonably safe condition for the travel thereover, then the court instructs you that the city has performed its duty in that regard, and you will find for the defendant."

10.

"The court instructs the jury that if they believe, from the evidence, that Mrs. Scott, the mother and administratrix of Jacob Scott, deceased, knew of the existence of the hole in which he was found dead, and knew that such hole was alluring and enticing to children, and that it was dangerous; and fur-

ther knew that he had, before the time of the injury, exposed himself to such danger by going to or playing around such hole, then the court instructs the jury that said Mrs. Scott should, by such efforts and measures as reasonable care and prudence would have required under the circumstances, have sought to prevent the said Jacob Scott from going to said hole or playing around the same, and if the jury believe, from the evidence, that said Mrs. Scott did not make any such efforts or take any such measures, then the court instructs the jury that she was guilty of negligence; and if by such negligence, co-operating with the negligence of the city, the child came to his death, then the plaintiff cannot recover."

And the court gave the defendant's instructions 5, 6, 7, 8 and 9, as asked, and refused to give defendant's instructions 1, 2, 3, 4 and 10, as asked, but gave defendant's instructions 2 and 3, amended by the court, as follows:

### 2.

"The court instructs the jury that the city is not required to open for travel new streets in advance of public needs, even though the necessary land required therefor may have been dedicated by its owners, and accepted by the city for the purposes of a highway, and so shown on a city map. And until such time as it, *or some portion thereof*, has been opened and used as a highway no liability rests upon the city for failure to keep and maintain the said land so dedicated, accepted and merely existing as a street on the city map, *or any part thereof*, in a reasonably safe condition for travel thereon as a highway."

### 3.

"The court instructs the jury that where there is little or no travel upon a highway that a city is not necessarily bound to

open, prepare and maintain in a reasonably safe condition for travel the entire width of the street, and that it has done its entire duty when it has wrought and kept in a condition reasonably safe for ordinary travel a highway of sufficient width to reasonably accommodate travellers to and fro over such highway, *or others lawfully using the same.* And if they believe, from the evidence, that only a portion of Virginia avenue, at the place where the accident is alleged to have occurred, had been used for travel and accepted as a highway, and not its entire width, and the part actually used and accepted and a reasonably safe distance therefrom was, at the time of the alleged accident, in a reasonably safe condition for travel thereon, *or other lawful use thereof,* then there is no liability upon the city for failure to provide a safe highway for travel."

And the court, of its own motion, instructed the jury as follows:

"1. Notwithstanding the jury may believe, from the evidence, that the city has performed its duty in the maintenance of the portion of Virginia avenue in question as a safe highway for travel, yet the city may be liable under the facts and circumstances set out in plaintiff's instruction No. 5.

"2. The court instructs the jury that all the instructions are the instructions of the court, and are to be read together."

To the action of the court in giving plaintiff's instructions 1, 2, 3, 4, 5, 7 and 9, and in refusing to give the defendant's instructions 1, 2, 3, 4 and 10, and in giving, as amended by the court, defendant's instructions 2 and 3, and in giving of its own motion, the court's instruction 1, above set forth, defendant, by its counsel, excepted.

*J. A. Massie,* for the plaintiff in error.

*Jeffries & Lawless,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

About six o'clock on the afternoon of July 10, 1903, Jacob Scott, an infant four and one-half years of age, was ·found drowned in a large hole filled with stagnant water, in the middle of Virginia avenue, between Forty-first and Forty-second streets, in the city of Newport News, and this action was brought by his mother, as his administratrix, to recover damages of the plaintiff in error for having, as alleged, negligently caused the death of her intestate by allowing one of its streets to be and remain in a dangerous condition. The trial resulted in a verdict and judgment thereon in favor of the plaintiff for $5,000. From this judgment the case has been brought to this court for review.

The declaration states a good cause of action, and hence the demurrer thereto was properly overruled.

In order to make clear the ground of our conclusion in this case, it will be necessary to state as briefly as possible the salient facts established by the evidence.

Virginia avenue, south of Fortieth street, has been graded by the city, curbing laid, electric lights established, water plugs located, and the avenue made in all respects a finished street, having houses erected on either side. Beyond Fiftieth street, in a northerly direction, this avenue has been opened up, graded and put in shape for use, the work having been done by the Old Dominion Land Company prior to the act by which the territory was made a part of the city of Newport News; but this portion of the street has now been taken charge of by the city, and is under its management and control. The avenue covering the intervening space between Fortieth and Fiftieth streets has not been graded or otherwise improved, and has no houses which front thereon, but the cross streets which intersect Virginia avenue from Fortieth to Fiftieth streets are

built up with residences on both sides nearly to that avenue. These residences are, as a rule, occupied by persons, with their families, who are employed in the ship-building plant located in Newport News.

The accident which is the subject of this inquiry occurred in Virginia avenue, between Forty-first and Forty-second streets, and, while the avenue at that point has not been graded and improved by sidewalks, or otherwise, it is entirely open and in daily use by numbers of people as a means of ingress and egress, and is conspicuously frequented by large numbers of children. A pathway wide enough to accommodate two or three persons is worn along one side of the street, indicating that the travel is confined to that side. At the intersection of Virginia avenue with Fortieth street, there is an electric arc light, and at its intersection with Forty-second street there is another. The expense of maintaining these lights is borne by the city. In the centre of Virginia avenue, five feet below the surface, a twelve-inch sewage pipe is laid, which extends from the heart of the city on the south, up to and beyond Fifty-seventh street on the north. This sewage system is owned, controlled, and maintained by the city. At a point on Virginia avenue between Forty-first and Forty-second streets, a large hole, twenty-nine feet long, twelve feet wide, and five feet eight inches deep, was made in the centre of the street. This dangerous place resulted from a break in the sewer pipe at that point, which caused the earth to sink and be carried off; and, the pipe becoming stopped up in some way, the hole filled with water.

When this condition of things occurred the first time, it was reported by the police officer whose beat included that portion of Virginia avenue, to the proper city authorities, several times, and finally the city street force undertook to repair the damage and fill the hole up. In a very short time thereafter another

hard rain caused the pipe to again break, making the same hole, which was again filled with water. The same police officer, whose duty it was to report all defects in the streets within his beat, again and again reported this second break, and the consequent dangerous condition of this place to the proper city authorities, who paid no attention to these repeated warnings, and left this dangerous pitfall for several months and until the 10th of July, when the accident happened for which reparation is now sought in damages.

The deceased child lived with his widowed mother at 328 Forty-second street, distant one hundred and sixty feet from the point of accident. At fifteen minutes before six o'clock this little child was in the house with his mother, and at six o'clock she was notified of his death by a young lady who was passing along the street, and had pulled him from the hole of water, drowned.

In the light of these facts, we find it wholly unnecessary to deal with the contentions of plaintiff in error, that Virginia avenue, at the point of the accident, was not open to the public; that if open at all it was only to the extent of that portion over which the public had worn a pathway, and that no duty rested upon the city to maintain the rest of the street; and that the hole of water was sufficiently removed from the pathway to be no menace to those who kept in the path.

As shown by the ordinances of the city and the map of its streets and alleys, duly recorded in accordance with section 1014 of the Code of 1887, Virginia avenue had been dedicated and accepted by the city of Newport News as one of its public streets. It was under the supervision, management, and control of the city, and if not opened at the point of the accident in the sense that it had been improved with sidewalks and otherwise, it was open in the practical sense that the public, including large numbers of children, were using it daily with

the full knowledge and acquiescence of the city. Under such circumstances, the city cannot escape liability where it has allowed such a terrible death-trap as this record discloses to remain for months in one of its streets, where the public, including children, had the right to be, and did go. The city was warned repeatedly of this dangerous condition, and had recognized its obligation to repair by repairing the same place on a former occasion. It requires no citation of authority to support the proposition that such negligence was inexcusable.

The mother cannot, as contended, be said, as a matter of law, to have been guilty of contributory negligence. That was a question for the jury, and was submitted to them by a proper instruction. The mother, in this case, kept a boarding-house for laborers at the shipyard, as a means of support for herself and family. At the time of this accident she was busy preparing the evening meal for those who boarded with her. This little child was in the room with its mother, and within fifteen minutes, before she had missed him, the child was taken from this enormous pool of water that was in the centre of the street, and not more than one hundred and sixty feet from the door.

In the case of *City* of *Chicago* v. *Major*, *infra*, the action was brought against the city, in the name of the father, as administrator, for causing the death, by drowning, of an infant four years of age, in negligently permitting a water tank to remain in the street, defectively closed, for a period of one month. The court said, in reference to the question of contributory negligence: "A large majority of children, living in cities, depend upon the daily labor of both parents for subsistence, and these parents are unable to employ nurses who may keep a constant and vigilant eye, momentarily, upon their children; and we cannot hold, as a matter of law, that every time a child four years of age steps into the street unattended, the mother

is guilty of such negligence as would authorize every reckless or careless driver to run over and trample it down with impunity, or, as would authorize the city to expose traps and pitfalls in every corner of the streets, in which a child may be drowned or maimed. Such a rule of law would depopulate a city of its laboring inhabitants. In this, as in all other cases, it must be left to the jury to determine whether the parents of the child have been guilty of negligence in suffering the child to be in the streets." *City of Chicago* v. *Major*, 18 Ill. 348, 68 Am. Dec. 553.

The ruling in this case on the question of contributory negligence was affirmed in a subsequent case, by the same court, where the action was brought by an administrator against the same city to recover damages for the drowning of a child four years old in a ditch filled with water immediately in front of the residence of its parents. *City of Chicago* v. *Hessing, admr.*, 83 Ill. 204, 25 Am. Rep. 378.

An examination of the record shows that the rights of the plaintiff in error were not prejudiced by the action of the court in giving and refusing instructions, nor in refusing to set aside the verdict as contrary to the law and the evidence. Indeed, upon the whole case, it is difficult to see how any other verdict could have been rightly found.

For these reasons, the judgment must be affirmed.

*Affirmed.*