# Richmond.

## MARTHA J. BOHLKIN v. CITY OF PORTSMOUTH.

February 25, 1926.

Absent, Christian, J.

1. STREETS AND HIGHWAYS—*Care to be Exercised by Authorities to Keep Ways in Safe Condition—Particular Circumstances of Each Case.*—In each case a way is to be pronounced sufficient or insufficient as it is or is not reasonably safe for ordinary purposes of travel under the particular circumstances which exist in connection with that particular case.

2. STREETS AND HIGHWAYS—*Dedication—Acceptance by Municipality— Ordinance Changing Name of Street—Case at Bar.*—In the instant case, an action for injuries to a pedestrian alleged to have arisen from a defect in a street, it was contended by the city that there had been no acceptance of the street in question by the municipality. The only act of the city council with reference to the subject was an ordinance changing the name of the street. Prior to the passage of this ordinance there was nothing in the record to establish or suggest that the street had been dedicated to the city or accepted by the city; and since the passage of the ordinance there had been no such user on the part of the city as would establish a common law dedication and acceptance. The city seems to have exercised no control over the street, to have made no improvements thereon and to have done nothing to invite its use by the public.

   *Held:* That it would seem that a judgment in favor of the city might well have been sustained because of the failure of the plaintiff to show acceptance of the street by a proper ordinance.

3. STREETS AND HIGHWAYS—*Dedication—Acceptance.—Who May Accept.*— An acceptance of a street or highway may be accomplished by the affirmative action of the public authorities empowered by statute to accept a dedication. But inasmuch as an acceptance of the dedication of property for public purposes by a municipality imposes upon it duties and burdens with respect thereto, in order to constitute a valid acceptance by a municipality, such acceptance must be by the properly constituted authorities. Municipal councils or other bodies charged with the opening, maintaining, and repairing of streets may accept a dedication. On the other hand, a tax assessor, a

street commissioner, a surveyor, or an overseer of highways is without power to accept a dedication. And so is a police department, a tax department, or a bureau of highways.

4. STREETS AND HIGHWAYS—*Rights of Pedestrians—Duty of the City.*—While it is true that travelers on the city streets have the right to use any of its streets or sidewalks which have by the city been opened for that purpose, it does not follow that every open space over which pedestrians can pass to reach a given objective, and which are in fact so used, imposes upon the municipality duties or obligations in connection with their maintenance.

5. STREETS AND HIGHWAYS—*Alleys and Lanes—Liability of City.*—Lanes or alleys running through city blocks are in evidence in every city; they serve as the rear entrance to lots fronting on the streets that form the boundary of the block, and are almost universally left there for the convenience of those whose lots abut thereon. Cities may and frequently do recognize their existence without in any way assuming control over them further than may be necessary in the exercise of the police power.

6. STREETS AND HIGHWAYS—*Alleys and Lanes—Liability of City for Personal Injuries—Case at Bar.*—In the instant case plaintiff was injured while passing through a dark, wet and muddy lane at night, upon which there was no walkway for pedestrians, from a fall caused when she struck her foot against a water meter box, of the presence of which in the lane she must have had knowledge. The city had neither lighted, paved, nor improved the lane, and had done nothing to invite the public to use it. Around the regular sized city block, which the lane divided into two parts, the city had provided paved sidewalks, and lighted streets.

*Held:* That plaintiff was guilty of contributory negligence in using the lane instead of the sidewalks.

Error to a judgment of the Circuit Court of the city of Portsmouth, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Venable, Miller, Pilcher & Parsons, A. A. Bangel* and *C. E. Hodges,* for the plaintiff in error.

*R. C. Barclay* and *John W. Happer,* for the defendant in error.

MCLEMORE, J., delivered the opinion of the court.

The plaintiff here, and in the court below, lives on the north side of Randolph street in the city of Portsmouth between Fifth and Sixth streets, and nearly in front of Virginia street which runs parallel with Fifth street between it and Sixth street, and was originally known as Cooke's lane. This Virginia street runs south from Randolph and extends through two blocks, terminating in Lincoln street. While recognized as a street by the defendant city, it is in fact a dirt lane fifteen feet in width, without sidewalks, paving, curbing or guttering, with four small colored tenements fronting thereon, and is used by the people therein to reach the improved streets of the city and by the public generally in so far as they might find it convenient or desirable to do so.

This street or lane on the night of the accident was quite wet and muddy, and the plaintiff, who usually traveled on the east side of this lane, in going by short route to her daughter's home, on this occasion was walking along the west side to avoid the slushy and muddy condition on the other side. Her married daughter lived on the northwest corner of Henry and Virginia streets, and she was enroute to her daughter's home, just one block distant, to visit her sick son-in-law when she struck her foot against the water meter box, and was thrown to the ground and injured.

This meter box was visible in the day time from the end of plaintiff's porch and had been passed by her three or four times a week for twelve years. The street was without light save such as was reflected from Henry and Randolph streets, and on the night of the accident it was "awful dark and misting rain." To have traveled on paved and lighted streets to her

daughter's home would have necessitated her covering a distance of about 300 feet further than was required in reaching the same objective via Virginia street.

The box which she fell over is about half way between Henry and Randolph streets, and was located about eighteen inches from the building line of the west side of Virginia street, and stood out some five or six inches above the level of the land adjacent thereto. About this box plaintiff testified as follows: "I have lived in this house between twenty-four and twenty-five years, but I have known that lane for thirty-two years. Q. How many times a week do you suppose you passed through every week to see your daughter? A. I guess three or four times a week." This lane being only fifteen feet in width, plaintiff must have passed within twelve or thirteen feet of this box (some fifteen inches in diameter) in going and coming through the lane for all these years since its installation, and was obliged to have known of its presence.

With these facts practically uncontradicted does it present such a condition as to render the city liable in damages for the injury received by the plaintiff?

As was said by Judge Sims in .*City of Richmond* v. *Rose,* 127 Va. 772, 782, 102 S. E. 561:

[1] "(7) Decided cases are of but little assistance to the court in the consideration of such a question as that here before us. The authorities emphasize the truth that in this character of cases, especially—'*In each case* the way is to be pronounced sufficient or insufficient as it is or is not reasonably safe for ordinary purposes of travel *under the particular. circumstances* which exist in connection *with that particular case* * * *.' 28 Cyc. 1366-67. (Italics supplied.)"

The city attempts to escape liability, first, because it contends there has been no acceptance by the

municipality of Virginia street, and therefore no obligation of maintenance, or liability by reason of injury to travelers thereon.

[2-5] The only act of the council that can be found in the record with reference to this subject is an ordinance passed in September 1914, which reads: "And the lane heretofore known by the name of Cooke's lane, extending from Randolph street to Lincoln street, between Fifth and Sixth streets, shall hereafter be known by the name of Virginia street." The purpose of this ordinance seems to have been to change the name of an alley or lane, and call it a street. There is nothing in the record to establish or suggest that Cooke's lane, prior to 1914, had been dedicated to the city or by the city accepted through its council as required by the adjudicated cases in Virginia. *Winchester* v. *Carroll*, 99 Va. 727, 40 S. E. 37.

Since 1914, there has been no such user on the part of the city as would establish a common law dedication and acceptance. The city seems to have exercised no control over this street, to have made no improvements thereon and to have done nothing to invite its use by the public.

This case is to be distinguished from *Newport News* v. *Scott*, 103 Va. 794, 50 S. E. 266, where an accident was caused by a hole in an unimproved avenue, resulting in the drowning of a child, for which the city was held liable. There the city had undertaken to fill up the hole, but its re-appearance because of a heavy rain had not been remedied when the accident occurred, although it had been reported to the proper authorities by the policeman whose specific beat was along this unimproved avenue. In that case an ordinance of the city council showed that the avenue had been dedicated to and accepted by the council as one of its public streets.

In 18 *Corpus Juris*, page 80, it is said:

"An acceptance may be accomplished by the affirmative action of the public authorities empowered by statute to accept a dedication. But inasmuch as an acceptance of the dedication of property for public purposes by a municipality imposes upon it duties and burdens with respect thereto, in order to constitute a valid acceptance by a municipality, such acceptance must be by the properly constituted authorities. Municipal councils or other bodies charged with the opening, maintaining, and repairing of streets may accept a dedication. On the other hand, a tax assessor, a street commissioner, a surveyor, or an overseer of highways is without power to accept a dedication. And so is a police department, a tax department, or a bureau of highways."

The city had neither lighted, paved, nor improved this alley way, and had done nothing to invite the public to use it. Around this regular sized city block, which the alley divided into two parts, the city had provided paved sidewalks and lighted streets, making travel by pedestrians safe, convenient and easy, regardless of weather conditions.

And while it is true that travelers on the city streets have the right to use any of its streets or sidewalks which have by the city been opened for that purpose, it does not follow that every open space over which pedestrians can pass to reach a given objective, and which are in fact so used, imposes upon the municipality duties or obligations in connection with their maintenance.

These lanes or alleys running through city blocks are in evidence in every city; they serve as the rear entrance to lots fronting on the streets that form the boundary of the block, and are almost universally left

there for the convenience of those whose lots abut thereon. Cities may and frequently do recognize their existence without in any way assuming control over them further than may be necessary in the exercise of the police power.

To say that because pedestrians or vehicles use them as a "near cut" to reach their destination imposes upon the city the duty of upkeep and other attendant responsibilities, would be to place upon them intolerable burdens which the law imposes only after the proper authorities have expressed their willingness to assume them in some unequivocal way. *City of Richmond* v. *Stokes & Co.*, 31 Gratt. (72 Va.), 713; *City of Norfolk* v. *Nottingham, et al.*, 96 Va. 34, 30 S. E. 444; 18 Corpus Juris, page 80.

It would seem therefore that the judgment in this case might well be sustained because of the failure of the plaintiff to show acceptance of this street by proper ordinance, or such unequivocal acts of ownership as would leave no reasonable doubt that the council intended to assume possession and control thereof, but assuming the city's liability to pedestrians using Virginia street, unless excused by the contributory negligence of the person traveling over same, and we are brought to the much stressed question in the argument of the case, whether or not the plaintiff was guilty of such contributory negligence as to bar a recovery.

The enquiry is not whether the obstruction in the alley or street was of sufficient magnitude to render the city liable for an injury resulting to a pedestrian as in the instant case, but assuming the city to be liable, are the admitted facts such as to convict the plaintiff of contributory negligence as a matter of law.

The record justifies the court in assuming that plaintiff was entirely familiar with the condition of this lane, and of its unfitness for travel on a dark and rainy night. She knew it was unlighted; that there was no walkway provided for pedestrians; that the city had never in any way attempted to put it in condition for public use, and that on the night of the accident it was particularly muddy and difficult to traverse. She must also have known of the obstruction over which she fell, having passed within ten or twelve feet of it, three or four times a week for a number of years, and had lived within ———————— feet of the meter box since it was installed about twelve years ago.

[6] With such a state of facts appearing from the record, we think the plaintiff guilty of contributory negligence in going through this dark, muddy, unpaved and unimproved street, with *full knowledge of its unsafe condition,* and when the city had provided for her use a well lighted and well paved sidewalk over which she could reach her objective by a convenient way.

In *Paugh* v. *City of Parsons,* 74 W. Va. 425, 82 S. E. 204, it is said:

"A pedestrian who, on a dark night, walks without a light, on an ungraded part of a walkway in a new and unimproved city addition, with knowledge of its dangerous condition because of obstructions thereon, in lieu of the driveway, which he knows is equally convenient and more secure, because unobstructed, is guilty of contributory negligence precluding recovery against the municipality for an injury sustained while thereon.

"The degree (amount) of care which a city is required to exercise to keep its streets and sidewalks in a reason-

ably safe condition will vary according to the location, character and extent of the use to which they are put." 8 McQuillin on Mun. Corp. section 2737.

"A person using or traveling on a street or public way is required to reasonably exercise his faculties to discover and avoid dangerous defects and obstructions, the care required being commensurate with the danger or appearances thereof; and he is guilty of contributory negligence if by reason of his failure to exercise such care he fails to discover and avoid a defect or obstruction which is visible and obvious, or where the surrounding circumstances indicate danger." 28 Cyc. page 1426.

A jury in this case gave a verdict in favor of the plaintiff which the judge, after a personal inspection of the street and surrounding territory, set aside and entered judgment for the defendant. In this we think he was clearly right.

The frequency with which juries return verdicts against municipalities for personal injuries growing out of some irregularity on the street (often of a trivial nature), as in the case of *City of Richmond* v. *Rose*, 127 Va. 772, 102 S. E. 561, 105 S. E. 554, which a majority of the court felt constrained to affirm, together with the great respect accorded verdicts by the courts, have in some cases apparently left little of the conceded rule, that cities are not insurers of travelers upon their highways.

It should be remembered that the duty of the trial judge to set aside a verdict of the jury where the same is not justified by the law and the evidence is just as imperative as is the duty to sustain the verdict where a contrary condition exists.

The judgment will be affirmed.

*Affirmed.*