# Richmond.

## John T. Buchanan and Others v. Norfolk Southern Railroad Company.

### March 22, 1928.

### Absent, Burks and Campbell, JJ.

1. Instructions—*Duty of Jury to Obey Correct Instructions—Setting Verdict in Violation of Instructions Aside—New Trial where Verdict not Justified by the Law and Evidence.*—Where the jury, in violation of correct instructions of the trial court, found a verdict in favor of the defendants, the trial court acted correctly in setting aside the verdict and entering final judgment for the plaintiff. It is the duty of the court to set aside a verdict where the same is not justified by the law and the evidence.

2. Forcible Entry and Detainer—*Identity of Tract of Land in Question with that Conveyed in Plaintiff's Deed—Cast at Bar.*—The instant case was an action of unlawful detainer. There was a verdict for plaintiff and defendants appealed. One of the defendant's assignments of error was that the evidence did not show that the fifty acre tract of land defendants claimed to have held in adverse possession was the same fifty acre tract of land which was conveyed to plaintiff by a deed in evidence. The deed upon its face, aided by proper parol evidence, was sufficient to establish the identity of the tract. In addition the admission of the attorney for the defendants, the testimony of the witnesses, the plats made by the surveyors, the claims made by the defendants, and the whole conduct of the case made it perfectly clear that the fifty acre tract upon which the structures of defendants were located was within the boundaries of the fifty acre tract conveyed by the deed.

   *Held:* That there was no merit in this assignment.

3. Forcible Entry and Detainer—*Boundaries—Precise Boundaries of Land Immaterial—Case at Bar.*—The instant case was an action of unlawful detainer. The stone monuments referred to in the original deed of the tract in question could not be found, but there was no dispute between the holders of the record title to the adjacent land and the plaintiff in the instant case as to the precise boundaries of the tract, and, as it was clear that defendants' structures were located

within the boundaries of the tract, the precise boundaries were immaterial as between the defendants and plaintiff.

4. FORCIBLE ENTRY AND DETAINER—*Limitation of Actions—Defendants' Unlawful Possession Continued for More than One Year—Case at Bar.*— In the instant case, an action for unlawful detainer, it was contended that if defendants' possession was unlawful, it had continued for more than three years. If this was true, this possessory action brought under section 5445 of the Code of 1919 did not lie. But defendants' sole defense was adverse possession, and it appeared that defendants' possession was not adverse nor under a claim of title until a few months before the institution of the present action.

  *Held:* That plaintiff's action was not barred.

5. LANDLORD AND TENANT—*Fishery Lease—Incidental Right to Use Land of Lessor.*—Under a lease of all the rights of fishery "from or in front of" the landlord's land, as the lessees needed no permission of the owner of the shore to fish in public waters, they acquired by their lease the right to a limited use of the land owned by their lessor above high water mark, as incidental to the fishery.

6. LANDLORD AND TENANT—*Adverse Poss: sion—Occupancy by Tenant not Adverse.*—A tenant entering under a lease and so acknowledging his landlord's title, cannot claim that his occupancy thereof pursuant to the lease can ever be .et up to defeat the title of his landlord or those who claim under him.

7. LANDLORD AND TENANT—*Fisheries Lease—Adverse Possession—Greater Use of Premises than Warranted by Lease—Case at Bar.*—The instant case was an action of unlawful detainer, and defendants who had leased the right of fishery in front of the tract in question from plaintiff's predecessor in title defended on the ground of adverse possession. No claim of ownership was made by defendant against the landlord, or the landlord's successor in title, until just before the present action was instituted.

  *Held:* That while the defendants may have made a greater use of the highland than their right of fishery "from or in front of" it fairly allowed, yet such greater use was under color of their lease, and this alone was insufficient to sustain title by adverse possession. Such use as exceeded their rights must be construed to have been permissive.

8. ADVERSE POSSESSION—*Occupant's Possession Begun in Privity with Rightful Claimant—Notoriety of Disclaimer.*—Where the occupant's possession was begun in privity with the rightful owner, there must be a clear, positive and continuous disclaimer and disavowal of the title of the rightful owner, and the assertion of an adverse right brought home to the adverse claimant. The possession must have become tortious and unlawful by the disloyal acts of the party in possession, so open, notorious and continued as to show fully and

. clearly the changed character of his possession and notice thereof to the rightful claimant.

9. ADVERSE POSSESSION—*Evidence—Landlord and Tenant—Testimony that Defendants Claimed Ownership of Property—Case at Bar.*—In the instant case, an action for unlawful detainer, the court refused to admit testimony that defendants for many years had claimed ownership of the property in question, where no such claim of title was brought home either to the plaintiff or its predecessor in title, or to the assignees of either.

*Held:* That the testimony was inadmissible. A tenant paying rent regularly cannot be permitted thus to question the title of his landlord.

10. ADVERSE POSSESSION—*Landlord and Tenant—Lessee of Fishery Rights—Case at Bar.*—The instant case was an action for unlawful entry and detainer. Plaintiff's predecessor in title leased to defendants' predecessor in title all the rights of fishery "from or in front of" the land in question, and the lease expressly recognized the ownership of the land as being in plaintiff's predecessor in title. Being in possession of the fishing privileges, defendants used a part of the tract in question but at no time asserted any claim of ownership against the owner of the tract, though the defendants, or some of them, testified that they thought no one owned the tract. The testimony of a predecessor of defendants in the fishing privileges showed that he considered the use of the highland as incidental to his lease of the fisheries. The rent of the fishery rights was increased, which increased rent defendants paid from 1920 to 1925. Plaintiff's predecessor in title in 1925, when it sold the tract in question to plaintiff, notified defendants of the sale to plaintiff and that they must move their plant if plaintiff desired it. No claim of title by adverse possession was made by defendants on receipt of this letter. When plaintiff contracted to sell the tract defendants came to plaintiff and asked for permission to stay on the property until the end of the fishing season. Plaintiff and its predecessor in title paid the taxes on the tract and none were paid by defendants.

*Held:* That defendants' possession of the land was incidental to their lease of the fishery and was not adverse to plaintiff.

Error to a judgment of the Circuit Court of Princess Anne county, in an action of unlawful entry and detainer. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Cleaton E. Rabey, John N. Sebrell,* and *Melvin E. Cruser,* for the plaintiffs in error.

*Jas. G. Martin, Jas. E. Heath,* and *C. M. Bain,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

This is an action of unlawful entry and detainer brought by the Norfolk Southern Railroad Company against John T. Buchanan, Richard Buchanan and Roland Buchanan, which has been decided in favor of the plaintiff.

The trial court gave the jury two instructions—the first that "the plaintiff has proved valid record title to the property in question, and defendants' sole defense is adverse possession;" and second, that "in this case the possession of the defendants was not adverse nor under claim of title until a few months ago, and it is the duty of the jury to disregard the defense of adverse possession now set up by defendants."

[1] The jury, in violation of these instructions, found a verdict in favor of the defendants, which the trial court set aside and entered final judgment for the plaintiff.

If the instructions were correct, then of course the judgment is correct. That the jury were legally bound to obey them cannot be doubted. *Bohlkin* v. *City of Portsmouth,* 146 Va. 348, 131 S. E. 790, 44 A. L. R. 810; *Vandenbergh & Hitch, Inc.,* v. *Buckingham Apt. Corp.,* 142 Va. 397, 128 S. E. 561; *Eastern Coal & Export Corp.* v. *N. & W. Ry. Co.,* 148 Va. 140, 138 S. E. 471.

These are the facts relied on in support of the judgment: Cape Henry Park and Land Company, on October 24, 1900, conveyed certain property to the Chesapeake Transit Company. One parcel thereof was a right of way for a railroad, extending from Lynnhaven Inlet to Uber's line, near Virginia Beach. The other parcel conveyed thereby is the land in controversy, and is thus described:

"All that certain lot or parcel of land containing fifty acres measured in a square and fronting on Chesapeake Bay between Cape Henry Light and Lynnhaven river, as shown by a plat attached as a part of this deed and which is to be recorded herewith, the said land being also marked out upon the ground by four stone posts set one at each corner of the said land, together with all rights and privileges thereunto belonging or in any way appertaining, save and except all rights of fishery from or in front of said land, which rights are hereby expressly reserved to the grantor and are not hereby conveyed."

The deed contained the covenant that the property so conveyed should be used only for railroad purposes. Norfolk Southern Railroad Company, plaintiff, is the successor in title to Chesapeake Transit Company, the grantee in that deed, while the Cape Henry Syndicate is the successor of the Cape Henry Park and Land Company, grantor therein.

Cape Henry Park and Land Company, on January 17, 1904, entered into an agreement with I. H. Buchanan, predecessor in title to the present defendants, leasing to him "all that lot of fisheries located on the shore of Cape Henry in the county of Princess Anne, extending from the Lynnhaven Inlet eastwardly along the said shore to a point opposite the 'Stone Wreck.' " The area included in this lease embraced all rights of

fishery "from or in front of" the land described in the deed of October 24, 1900, the fifty acres here involved. It provided that the lessee was "to have and to hold the said fisheries and fishing privileges." Among the covenants of Buchanan in this lease, we find this: "That the space over which he is allowed to fish by the terms hereof, shall be kept free and clear of decaying and dead fish and other animals brought up from the waters by such fishing operations; and that, during said term, the said Cape Henry Syndicate, or its assigns, shall have free and unlimited access to any portion of the shore hereby leased, for the purpose of erecting wharves or other improvements not for the purpose of conducting a fishery." So that, by the lease of the fishery under which the defendants obtained possession, the ownership of the adjacent land above high-water mark was thus expressly recognized, and the covenant of the lessee, Buchanan, obliged him to respect all of the riparian rights incident to the ownership of such adjacent land.

This tenancy was renewed each year from its date to and including the year 1925, by I. H. Buchanan, during his lifetime, and after his death by the defendants, his successors in the operation of such fisheries.

Norfolk Southern Railroad Company, Cape Henry Syndicate and Atlantic Beach Hills, Incorporated, on July 16, 1925, entered into a contract whereby Cape Henry Syndicate conveyed to Norfolk Southern Railroad Company, plaintiff, all of its right, title and interest in and to the property described in the conveyance of October 24, 1900, particularly the fifty acres therein mentioned, save and except the fishing privileges from and in front of said land, and agreed to release the covenant in the former deed, that the property thereby conveyed should be used for railroad purposes

only, and thus vested the plaintiff with the title free and clear of that covenant; so that the Norfolk Southern Railroad Company, plaintiff, could thereafter either use the property for any lawful purpose or sell and transfer it.

Being in possession of the fisheries and fishing privileges under the lease of January 27, 1904, and the yearly renewals thereof, Buchanan and the defendants, his successors, used a part of the fifty acre tract conveyed by the deed of October 24, 1900. In 1913, I. H. Buchanan, the lessee, was a member of the board of directors of Cape Henry Syndicate, successor in title to the lessor, and attended a meeting December 27th, at which a question as to the construction of the deed to the fifty acres here involved was considered. During the entire period, Buchanan and his successors, as lessees, paid to the Cape Henry Syndicate rental for the use of the fisheries. At no time did these lessees assert any claim of any ownership, right or title thereto against the owner of the fifty acre tract. While the defendants, or some of them, testified that they thought that no one owned the fifty acres in controversy, it is perfectly apparent from the written evidence that they knew they had no legal title thereto, and that the property was owned by their lessor, or the railroad company, as successor in title thereto. One Shepherd James had leased these fishing privileges before the Buchanan lease, and as incidental to his fishing rights thereunder had constructed certain buildings thereon above high water mark, for his use in connection with the fisheries and fishing privileges so leased by him. The shores were used in hauling out the nets; for the housing of their fishermen; the storage, icing and preservation of fish; for the protection of the seines, fishing tackle and boats when not in use; for the transportation and delivery of fish across the

intervening land to the railroad, which intersected the fifty acre tract, for shipment. The testimony of James shows that he considered the use of the highland for such purposes as incidental to his lease of the fisheries.

During the period from 1904 to 1920, a rental of $600 per year was paid by the defendants. In 1920, Cape Henry Syndicate increased this rental to $750 per year, and the following letter, written at the time of the acceptance of this increase, shows conclusively that at that time the defendants, as tenants, placed the same construction upon their lease of the fishing privileges as had been placed by James, by their lessor, and as has been placed upon it by the court. This letter reads:

"Mr. Southall was in to see us to-day, and told us that the best that could be done for the Cape Henry property was $750.00. Now I think that is right much, as we will have to spend considerable on buildings, etc. As we are there, and all material, etc., on premises, besides the trouble and expense of moving elsewhere, will take the property at the above amount, $750.00. Hoping to hear from you soon, we are,

"Yours respectfully, etc.,
        "JOHN W. BUCHANAN & SONS."

From 1920 to 1925, this increased rental was paid. Then on October 8, 1925, Cape Henry Syndicate, in acknowledging receipt of check for $750 for the 1925 rental, stated: "Your fishing plant is now located on property owned by the Norfolk Southern Railway. If they desire it moved, this would have to be done at your expense to a designated point on our property east of their fifty acres, or lease cancelled ratably for the time you have operated on this current year. It

is only upon the above conditions that your check is accepted and used by us and under any other conditions we would have to decline to accept it for any advanced period other than from month to month. We desire to protect you and show you every consideration, but the facts are as outlined. If your fishery is located on our property—where we designate—we can, if agreed to by this company, protect you on a yearly lease." The last clause evidently means that the Cape Henry Syndicate had other property along the same shore to which their movable property could be transferred, and which would be rented to the Buchanans on yearly rental. No claim of title by adverse possession, or any other adverse claim, was made by the defendants either to the Cape Henry Syndicate or to the Norfolk Southern Railroad Company after the receipt of that letter until this controversy arose.

The Norfolk Southern Railroad Company, plaintiff, contracted to sell the fifty acres in the latter part of 1925. The defendants came to the general superintendent of the electric division of the company, in the spring of 1926, stating that they had heard that the company had sold this fifty acres, and asked if some arrangement could be made for them to stay on the property until the end of the fishing season. They made no specific claim of ownership at that time. When the party to whom the company had contracted to sell it notified the Buchanans of their purchase of the property, no claim was made of any ownership until several days after the purchaser started to make improvements. The prospective purchaser had previously entered upon the land, surveyed it, taking several days, and no claim of ownership was made then. Prior to that time, in 1923, the plaintiff com-

pany gave the board of supervisors of Princess Anne county a right of way fifty feet wide across the premises involved, upon which a concrete road was thereafter constructed, and no objection was made by the Buchanans to this assertion and exercise of ownership by the plaintiff. The taxes on the fifty acres from 1901 have been paid by the Norfolk Southern Railroad Company, or its predecessors in title, and no taxes thereon have been paid by the defendants at any time.

Such legal use as the defendants have made of parts of the fifty acres has been by authority of and in connection with their leases of fisheries and fishing privileges; and for these purposes have used exclusively only a very small portion thereof.

[2, 3] One of the assignments of error is that the evidence does not show that the fifty acre tract which the defendants claim to have held in possession is the same fifty acre tract which was conveyed to the plaintiff. The answer to this is that the deed upon its face, aided by proper parol testimony, is sufficient. In addition to this the admission of the attorney for the defendants, the testimony of the witnesses, the plats made by the surveyors, the claims made by the defendants, and the whole conduct of the case make it perfectly clear that the land above high water mark upon which all these structures are located is within the boundaries of the fifty acre tract. No one has been able to find the stone posts referred to in the original deed for the fifty acres, but there is no dispute between the holders of the record title to the adjacent land and the plaintiff here as to the precise boundaries of the tract. In this case, these precise boundaries are immaterial as between the defendants and the plaintiff.

As examples of these admissions, this appears in the opening statement of defendants' attorney: "Now, my friend says we went there because we had leased some fishing privileges from Cape Henry Syndicate. Now when the deeds are introduced in evidence, and the records are shown you, you are going to find that the Cape Henry Syndicate had sold this fifty acres to the Chesapeake Transit Company, four years before we made this lease, and we could not lease from them property they had sold four years before.   *   * We expect to show you that the Buchanans have claimed it for twenty-two years; have claimed it against the world; have refused to let people go on there, and everybody has recognized their right to it, that we are entitled to it, and if we show these facts, and if the court tells you uninterrupted adverse possession for fifteen years gives them title, we shall expect a verdict for the defendants, and if we don't show these facts then we will expect you to bring in a verdict for the plaintiff."

If the attorney expected to make the point that the fifty acres claimed by the plaintiff under its deed was not the same fifty acres claimed by the defendants under adverse possession, this statement could not have been made.

Then one of the defendants, Richard Buchanan, testified thus:

"Q. You live on the premises, do you not?

"A. I do.

"Q. This fifty acre tract?

"A. Yes, sir."

It is unnecessary to recite the testimony of other witnesses showing beyond peradventure that the defendants are claiming by adverse possession the same fifty acres, or part of it, which was conveyed to the

plaintiff by its deed. As confirming this, no instruction was offered by the able counsel for the defendants on this point, and no other question as to the identity of the land in controversy was raised before the jury in addition to the mere exception to the introduction of the deed as insufficient to identify the property.

[4] Another point made is, that if the defendants' possession is unlawful, it has continued for more than three years. Of course, if this be true, this possessory action brought under Code, section 5445, does not lie. The determination of this question is vital and requires a consideration of the testimony oral and written.

[5] The lease is of all rights of fishery from or in front of the land. We take it that the lessees needed no permission of the owner of the shore to fish in the public waters. What they acquired by their lease then was the right to a limited use of the land owned by their lessor above high-water mark, as incidental to the fishery. What they paid for was the riparian right of fishery which was vested in the owner of the land above high water mark. The land conveyed to the railroad company was described as fronting on Chesapeake Bay, and the easement reserved was the right of their grantor to make a limited use of the land so conveyed above high water mark, that is, the right to such use as might be reasonably necessary of the land above high water mark as incidental to the exercise of the right of fishery "from or in front of" the land. This easement so reserved was leased to the defendants. These riparian rights of owners of such shores seem to be quite well settled in Virginia by the cases of *French* v. *Bankhead*, 11 Gratt. (52 Va.) 160; *Groner* v. *Foster*, 94 Va. 650, 27 S. E. 493; *Waverly, etc., Co.* v. *White*, 97 Va. 176, 33 S. E. 534, 45 L. R. A. 227.

James had been already using some of the upland of the property in connection with his fisheries when the defendants took possession.   The lease would have been utterly worthless to the lessees unless in connection with the right of fishery from or in front of the land they could make a limited use of the adjacent shores.   The lessee was by the lease vested with the incidental right to use such parts of the upland as might be reasonably necessary for ingress and egress; for the lodging of fishermen; for preparing and preserving the nets and tackle; for placing and hauling in the seines; for beaching, repairing and housing fishing boats and fishermen, and for assorting and packing the fish for transportation after they had been caught.   James, their predecessor, had found it necessary to use the adjacent land for these purposes, and had erected buildings therefor on this particular piece of land; so that both parties must have understood that the lease included certain privileges to be exercised on the land above high water mark.

In making the claim of adverse possession, the defendants say they did not think the land belonged to anybody.   As indicating its necessary incidental use in connection with the fishery, this remark of one of the defendants is illuminative:   "We were under the impression that piece of land didn't belong to anyone. It was a piece of waste land; nobody seemed to claim it and it was not useful to anybody, or we thought it was not, and we thought it would be good in conjunction with our fisheries and we thought we would claim it."

This seems to us to be an obvious inconsistency, for if the adjacent land above high water mark didn't belong to anybody, there was no reason for their paying rental for the privilege of fishing from or in front of it.

[6, 7] It is hardly necessary to say that a tenant entering under a lease and so acknowledging his landlord's title, cannot claim that his occupancy thereof pursuant to the lease can ever be set up to defeat the title of his landlord or those who claim under him. It may be that these defendants made a greater use of the highland than their right of fishery from or in front of it fairly allowed, but if so such greater use was under color of their lease, and this alone is insufficient to sustain such a title. Such use as exceeded their rights must be construed to have been permissive. In this case it is shown beyond peradventure that no claim of ownership was made as against the landlord, or the landlord's successor in title, until just before this action was instituted.

[8] The principle involved is thus expressed in 2 Minor on Real Property, section 1033: "Finally, it is to be observed, that if the occupant's possession was begun in privity with the rightful claimant, a higher degree of notoriety must attach to the possession than would be demanded if there were no such relation between the parties, for the privity is itself an explanation of the possession, and the rightful owner is not bound to seek another, unless notice of the fact of the disloyal *severance of the privity* be brought home to him. Hence, in such case, there must be a clear, positive and continuous disclaimer and disavowal of the title of the rightful owner, and the assertion of an adverse right brought home to the adverse claimant. The possession must have become tortious and unlawful by the disloyal acts of the party in possession, so open, notorious and continued as to show fully and clearly the *changed character of his possession* and *notice* thereof to the rightful claimant." *Hulvey* v. *Hulvey*, 92 Va. 182, 186, 23 S. E. 233; *Thompson* v.

*Camper*, 106 Va. 315, 317, 55 S. E. 674; *Stuart* v. *Meade*, 119 Va. 757, 89 S. E. 866.

A fair consideration of these conveyances makes it perfectly manifest to us that the use of such part of the fifty acres in connection with the fishery was by virtue of and incidental to the lease, and, therefore, that until a few months before this action was instituted that possession was lawful. It only became unlawful when the defendants repudiated the landlord's title and claimed to own the property because of adverse possession.

[9] Another assignment is based upon the refusal of the court to admit testimony that for many years the Buchanans had claimed the property. This testimony was inadmissible as against the plaintiff, because there was no such claim of title brought home either to the plaintiff company or to the Cape Henry Syndicate, or to the assignees of either, and because a tenant paying rent regularly cannot be permitted thus to question the title of his landlord. If such testimony could be admitted to defeat the record title, it would always be dangerous to permit a tenancy to continue for longer than the statutory period necessary to establish title by adverse possession.

[10] It was the duty of the court to construe the documents—the lease and the deeds—aided by appropriate parol evidence. They have been properly construed. Such possession of the land in controversy as the defendants had was incidental to their lease of the fishery. To have held that they merely had the right to use the land between high and low water mark would have destroyed the value of their lease. The acceptance of the lease, entry thereunder and payment of the rent therefor constitute an admission that their lessor and its assignees were the owners of the

adjacent land above high water mark.    The instructions to the jury were based upon a proper construction of these instruments.    It was the duty of the court to set aside their verdict rendered in defiance of these instructions, and the case has been properly decided.

*Affirmed.*