**UNITED STATES of America,**
**Plaintiff-Appellee,**
**v.**

**MT. VERNON MEMORIAL ESTATES, INC. and John Sexton Sand & Gravel Corp., Defendants-Appellants.**

**No. 83–1694.**

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 10, 1983.*
Decided May 16, 1984.
As Amended May 31, 1984.
Rehearing Denied June 6, 1984.

---

\* This case originally was to be orally argued on November 10, 1983. Appellants' counsel informed the court through motion received November 8, 1983, that he would be unable to appear for argument. The appeal has been submitted on the briefs and record. *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f).

Russell J. Topper, Chicago, Ill., for defendants-appellants.

Gail C. Ginsberg, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., Kay L. Richman, Land & Natural Resources Div.,

Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before ESCHBACH, POSNER, and FLAUM, Circuit Judges.

ESCHBACH, Circuit Judge.

The procedural history of this protractive yet intermittent litigation dates to September 27, 1976, when the United States filed a complaint for injunctive relief against Mt. Vernon Memorial Estates, Inc. and John Sexton Sand and Gravel Corporation ("the companies"), alleging that they had disposed of dredged or fill material in navigable waters at the Smitty Road landfill in Cook County, Illinois, without obtaining the required permit from the United States Army Corps of Engineers ("the Corps"), in violation of the Clean Water Act, 33 U.S.C. §§ 1311, 1319, and 1344. The complaint further alleged that the companies had ignored an August 20, 1976 stop work order and an August 25, 1976 cease and desist order issued by the Corps. The United States sought a permanent injunction barring further disposals at the site until a permit had been obtained. A motion for a temporary restraining order, filed by the United States on September 28, 1976, reiterated the allegations of the complaint. On October 5, 1976, the United States filed a motion for a preliminary injunction. On that same day, the district court, pursuant to an agreement between the parties, ordered the companies to cease disposal at the site pending a ruling on the motion for a preliminary injunction.

On November 16, 1976, the companies filed an answer to the complaint, admitting that they had disposed of dredged or fill material at the site without a Corps permit, but raising three affirmative defenses: (1) that the Corps lacked jurisdiction over the site; specifically, that the Corps regulation defining "navigable waters," 33 C.F.R. § 209.120(d)(2)(i)(i), "is an unauthorized and invalid exercise of delegated legislative authority"; (2) that pursuant to section 101(b)

of the Clean Water Act, 33 U.S.C. § 1251(b), federal regulatory authority was preempted by prior state administrative and judicial authorizations to construct a sanitary landfill at the site; and (3) that the Corps' regulatory authority over discharges of dredged or fill material in primary tributaries, their contiguous or adjacent wetlands, and all lakes, effective as of July 1, 1976, could not operate retroactively to defeat the companies' vested land use rights. The companies' response to the United States' motion for a preliminary injunction, also filed on November 16, 1976, incorporated by reference their answer to the complaint. That same day, the companies filed a motion for summary judgment and supporting memorandum which expounded the asserted affirmative defenses. The United States filed its response on December 10, 1976, and the companies replied on January 3, 1977.

On June 17, 1977, the district court, per Judge Crowley, denied the companies' motion for summary judgment. In its memorandum opinion, the court concluded that the existence of disputed issues of material fact as to whether the Smitty wetlands are "navigable waters" precluded summary judgment. Specifically, questions remained as to whether the Smitty wetlands "serve important natural biological functions, including food chain production, general habitat, and nesting, spawning, rearing and resting sites for aquatic or land species." 40 C.F.R. § 230.4–1(1)(i). In addition, the court found unresolved factual issues remained concerning the wetlands connection with interstate commerce. The companies' preemption argument was explicitly rejected and all other contentions were stated to be without merit.

On July 1, 1977, a hearing on the United States' motion for a preliminary injunction began, but was never resumed. The matter lay dormant until June 30, 1981, when the case was reassigned to Judge Aspen and the companies filed an amended answer to the complaint. The amended an-

swer again challenged the Corps' jurisdiction over the site and the unconstitutional retroactive destruction of vested land use rights. The companies further claimed that the "adoption and enforcement" of section 404 of the Clean Water Act and its implementing regulations had deprived them of the economic use of their property, without due process and without just compensation; by way of counterclaim, the companies sought $7 million as just compensation for the property and $1 million in damages for the unconstitutional taking.

By order dated November 13, 1981, the district court granted the United States' motion to dismiss the counterclaim on the ground that exclusive jurisdiction of all claims against the United States in excess of $10,000, not sounding in tort, lies with the United States Court of Claims pursuant to 28 U.S.C. § 1491. Settlement discussions ensued pursuant to court order, and the companies ultimately agreed to apply for a Corps permit. Upon the United States' motion, the case was dismissed formally by order dated December 14, 1981; the order of dismissal was entered on December 16, 1981.

On January 8, 1982, the companies filed an emergency motion to modify the dismissal to provide for leave to reinstate the cause within 90 days. The motion was granted and the companies were given leave to reinstate on or before April 8, 1982. The time within which the companies might reinstate subsequently was extended to July 9, 1982 and September 13, 1982. On August 13, 1982, the Corps denied the companies' permit application. On September 14, 1982, the companies filed instanter a motion to reinstate and for judgment in their favor. They sought dismissal of the United States' complaint pursuant to Rules 12(b), (c), (h)(3), and 56 of the Federal Rules of Civil Procedure, arguing again that the Corps lacked jurisdiction over the site and that the Corps' denial of their permit application constituted a taking of their property without just compensation in violation of the Fifth Amendment.

By order dated October 27, 1982, the companies' motion was denied. In its memorandum opinion, the district court noted that it had granted "leave to reinstate should [the companies] subsequently desire judicial review of whatever action the Corps of Engineers took on their permit application," suggesting that leave to reinstate the original cause was never contemplated. The court concluded that reinstatement of the original cause would be inappropriate, stating:

> The government's action was predicated on the fact that defendants had never *applied* for a permit for their landfill activities. Defendants *have* now applied for a permit. Notwithstanding the fact that defendants' application has been denied, the dispute is in a different posture than it was prior to its dismissal and their attempt to reinstate the original action is misplaced.

Finally, the court explained that the companies were free to pursue administrative or judicial review of the denial of their permit application.

The companies' subsequent motion to vacate the order of October 27, 1982, filed on November 5, 1982, was denied on March 17, 1983. On April 15, 1983, the companies filed notice of appeal from the order of March 17, 1983, which denied their motion of November 5, 1982 to vacate the order of October 27, 1982, which denied their September 14, 1982 motion to reinstate, and from the December 16, 1981 dismissal.

I

The initial issue to be addressed in this case is the scope of appellate review. Although the companies' notice of appeal challenges the December dismissal, in their brief they contend that the order of October 27, 1982, denying their motion for leave to reinstate, is the sole final and reviewable order. They argue that their motion of January 8, 1982 "to add the parties' reinstatement agreement that had been previ-

ously approved but mistakenly or inadvertently omitted" from the order of dismissal was timely filed under Fed.R.Civ.P. 60(b). They further argue that modification of the order of dismissal to provide for leave to reinstate within 90 days rendered the order of dismissal interlocutory; the dismissal became final only upon the denial of leave to reinstate on October 27, 1982. A timely appeal was taken from the denial of their Rule 59(e) motion to vacate the October 27, 1982 denial of leave to reinstate.

The government takes the position that this court has jurisdiction to review only the order of March 17, 1983, denying the companies' motion to vacate the order of October 27, 1982. In its view, the December 16, 1981 order of dismissal is the final judgment in this case. The government notes that the companies characterize their motion of January 8, 1982 as a Rule 60(b) motion; the companies therefore have effectively acknowledged the finality of the December 16, 1981 dismissal because Rule 60(b) applies only to final orders. In addition, because a Rule 60(b) motion does not affect the finality of the judgment, the district court's grant of the motion did not render the order of dismissal interlocutory. Accordingly, the April 15, 1983 notice of appeal does not bring up for review the December 16, 1981 dismissal.

The government further argues that the October 27, 1982 order is unreviewable because the companies failed to file notice of appeal within 60 days after its entry; because Rule 59(e) permits motions to alter or amend only the *original* judgment in a case, here the dismissal of December 16, 1981, the companies' November 5, 1982 motion to alter or amend the order of October 27, 1982 did not toll the time in which to file notice of appeal from the order of October 27.

The circumstances surrounding the voluntary dismissal of this action, as related by the companies, are as follows. Pursuant to settlement discussions between the

parties, the companies agreed to apply for a Corps permit, and the United States agreed to dismiss the action. Although the parties originally agreed that under the order of dismissal, the companies would retain leave to reinstate the cause within 90 or 120 days, this agreement subsequently was modified; under the new arrangement, the order of dismissal would be unconditional with the understanding that if the Corps failed to render a decision on the permit application within 30 days of dismissal, the order would be supplemented to provide for the companies' right to reinstate within 60 days thereafter.[1] The order of dismissal, drafted by the companies, was unconditional. Twenty-five days after the order of dismissal was docketed, the companies moved to modify the order to permit them leave to reinstate within 90 days of the date of modification, stating that "[t]o date, the United States Army Corps has not acted upon defendants' application for a permit to use the subject land as a sanitary landfill." The motion was granted by minute order.

■ Initially, we agree with the United States that the December 16, 1981 unconditional voluntary dismissal of the action, pursuant to Fed.R.Civ.P. 41(a)(2) and without prejudice because the order did not specify otherwise, qualified as a final judgment for purposes of appeal. *See* 5 J. Moore's Federal Practice ¶ 41.05[3] at 41–79 (2d ed. 1982); *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601 (5th Cir.1976). *Cf. Grantham v. McGraw-Edison Co.,* 444 F.2d 210, 212 (7th Cir.1971) (dismissal with leave to amend not a final order). The judgment of dismissal was set forth on a separate document and entered on the docket in accordance with Fed.R.Civ.P. 58 and 79(a).

The scope of appellate review turns on the effect of the motion to modify and its grant. Although the companies' motion to modify was not made pursuant to Rule 60(b) and contained no allegations support-

---

1. This arrangement was set forth in writing by letter dated December 7, 1981, drafted by the companies' counsel and sent to government counsel with the enclosed proposed district court order.

ing a request for relief from the judgment under one of the enumerated grounds set forth in Rule 60(b), in their main brief, the companies attempt to characterize the motion as a Rule 60(b)(1) motion for relief on the ground of "mistake" or "inadvertence." Despite the fact that the companies drafted the unconditional order of dismissal, they argue that their motion requested addition of the reinstatement agreement "that had been previously approved but mistakenly or inadvertently omitted" from the order of dismissal. · In their reply brief, however, they appear to characterize the motion to modify as one pursuant to Rule 60(b)(6). It is impossible to discern from the court's minute order the ground on which the motion was granted. We assume, for the purpose of this discussion only, the propriety of granting the initial motion. The question of its effect remains.

▮▮▮ We cannot agree with the companies that the order of January 8 rendered the order of dismissal interlocutory. Although a district court has the authority under Rule 60(b) to vacate a voluntary dismissal and reopen the case, most notably when the settlement agreement that led to the voluntary dismissal is repudiated, this did not occur in the present case. The district court's January 8, 1982 order did not state that the order of dismissal was vacated; it merely ordered that "defendants are given leave to reinstate the above cause within ninety days from date thereof," suggesting that the case might be reopened at some future date. When the companies ultimately sought to obtain that result on September 14, 1982 via a motion to reinstate and for judgment, they were unsuccessful. The companies challenged the October 27 denial of their Rule 60(b) motion of September 14, 1982 via a motion to alter or amend filed within ten days on November 5, 1982. Contrary to the government's assertion, a Rule 59(e) motion may be used to challenge the denial of a Rule 60(b) motion. *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1232 (7th Cir.1983). The motion of November 5, 1982 did toll the time in which to appeal the October 27, 1982 denial of the

companies' September 14, 1982 motion to reinstate. The companies' April 15, 1983 notice of appeal, filed within 60 days of the March 17, 1983 denial of the motion to alter or amend, properly preserved for review the October 27 denial of the motion to reinstate. We turn to the issue whether the district court abused its discretion in denying that motion.

## II

The companies' less than cogent argument on appeal appears to be that the district court abused its discretion in ultimately denying their motion to reinstate, characterized by them in their reply brief as a Rule 60(b)(6) motion, because the agreement which led to the voluntary dismissal of the action was repudiated. It is clear, however, that the companies are arguing that the district court's denial of the motion to reinstate constitutes the alleged repudiation of the agreement. The cases cited by the companies, in which Rule 60(b)(6) relief was justified by one party's failure to abide by the terms of the settlement agreement by which the judgment was obtained, are inapposite. The government breached no part of the agreement. The authority to permit reinstatement of the original cause, if indeed it existed, rested not with the government, but with the district court.

The companies contend that they sought and initially received the right to reinstate the original cause of action. The government asserts that "reinstatement" was to be allowed for the limited purpose of expediting judicial review of any adverse action taken by the Corps on the permit application. Although it is impossible to discern from the district court's minute order of January 8, 1982, granting leave to reinstate the cause within 90 days, exactly what was meant by the term "reinstatement," the court's memorandum opinion made clear that it intended to permit reinstatement for the limited purpose of judicial review of the action taken by the Corps on the permit application. The companies have presented

this court with no evidence that the district court represented otherwise.

The record contains no support for the companies' assertion that reinstatement of the original cause was to be permitted after the Corps rendered its decision on the permit application. The sole written evidence of the companies' understanding of the reinstatement agreement is that contained in counsel's letter of December 7, 1981 to government counsel. It appears from that letter that the companies sought only to preserve their right to defend against the United States' action in the event the Corps failed to act upon the permit application within 30 days of the December 16 dismissal. Indeed, the companies' emergency motion to modify was predicated upon the fact that the Corps had not yet rendered its decision. Nevertheless, the companies now would have this court believe that they struck the following bargain with the government and the district court: They would agree to apply for a Corps permit, and the government would voluntarily dismiss the lawsuit; however, if the Corps denied the permit application, the voluntary dismissal would be rendered null and void, and they would be permitted to reinstate the original cause of action and seek its dismissal with prejudice. In addition to lacking support in the record, this argument defies logic and the law of voluntary dismissal.

Although a district court has the authority to impose conditions on a voluntary dismissal under Rule 41(a)(2) in order to protect the interests of the defendant, we do not believe the district court would have had the authority to permit the companies to reinstate a cause of action that belonged to the government. Because the companies' counterclaim had been dismissed for lack of jurisdiction, they had no cause of action which they could seek to reinstate.[2]

Secondly, a voluntary dismissal turns back the clock; it is as if the plaintiff's lawsuit had never been brought. 5 J. Moore's Federal Practice ¶ 41.05[2] at 41–76 (2d ed. 1982). Although the voluntary dismissal without prejudice would not bar the government from reinstituting the same lawsuit, subject to certain limitations, once the unconditional dismissal was entered, the cause of action disappeared.

In concluding that reinstatement of the original cause would have been inappropriate, we need not rely upon the district court's analysis, which suggested that the original cause of action was mooted when the companies agreed to and did apply for a Corps permit. It is true that the government's lawsuit was predicated upon the fact that the companies were disposing of dredged or fill material at the site without government authorization in the form of a Corps permit. The government sought an injunction prohibiting further disposals at the site unless a permit was applied for and received. Although the practical effect of the lawsuit was to force the companies to apply for a permit, this was not the relief requested by the government. Having denied the permit application, the government still could pursue its request for a permanent injunction against disposals at the site. We hold that reinstatement of the original cause would have been inappropriate not because the cause was mooted when the companies applied for a Corps permit, but because upon unconditional voluntary dismissal by the government, no cause of action remained.

■ In sum, the record contains no written stipulation that the companies would be permitted to reinstate the original cause of action, no evidence that the dismissal was to stand only if the Corps acted favorably upon the companies' permit application, and no evidence that the district court's intent was in effect to stay judicial proceedings in the original action pending the outcome of administrative proceedings on the permit application. Rather, we are presented with the district court's opinion stating that "reinstatement" was to be permitted solely for the purpose of judicial review of any adverse action taken by the Corps on the

---

**2.** Indeed, at the time of the voluntary dismissal, the only affirmative defense that had not been rejected by the district court was that the Corps lacked jurisdiction over the site.

companies' permit application.[3] Faced with a record devoid of support for the companies' asserted understanding of their reinstatement rights and our conclusion that permitting reinstatement of the original action by the companies would have been legally unsound, we cannot but conclude that the district court did not abuse its discretion in denying the companies' motion to reinstate the original action. AFFIRMED.

3. One whose application for a Corps permit is denied may, after exhausting available administrative remedies, seek judicial review of that denial. *Buttrey v. United States*, 690 F.2d 1170 (5th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983); *Deltona Corp. v. Alexander*, 682 F.2d 888 (11th Cir.1982). Such review appropriately may include challenges to the Corps' assertion of regulatory jurisdiction. We are unaware whether the companies have exercised or intend to exercise this option, if still available.