In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 05-4096, 06-1255

NATHANIEL S. SHAPO,

*Plaintiff*,

*v.*

CLYDE WM. ENGLE,

*Defendant-Appellant*.

*v.*

FOLEY & LARDNER, LLP,

*Appellee*.

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7909—**Amy J. St. Eve**, *Judge*.

———————

ARGUED JUNE 13, 2006—DECIDED SEPTEMBER 11, 2006

———————

Before POSNER, COFFEY, and RIPPLE, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal challenges the dis-
trict court's jurisdiction to resolve a dispute between
the defendant, Engle, and the law firm, Foley & Lardner,
that represented him in a suit charging Engle and
others with unlawful acts that included violations of
RICO. Several years into the case the parties agreed to settle
it and so advised the court. In February of 2004 the court

ordered the suit "dismissed, without prejudice and with leave to reinstate on or before the 'Execution Date,'" defined in the order as the date on which the various undertakings set forth in it, including the parties' "sign[ing] all related agreements and exchang[ing] the consideration to which they have agreed," were completed. The order goes on to provide that upon that completion date "the dismissal of the claims in this action shall be with prejudice and without leave to reinstate," except that the court "shall retain jurisdiction to enforce the terms of the Parties' settlement and the Parties agree to this Court's jurisdiction." An accompanying minute order states: "this case is hereby dismissed without prejudice, with leave to reinstate by or on 6/7/04 at which time the dismissal will be with prejudice. This Court shall retain jurisdiction to enforce the terms of the Settlement Agreement."

The relation between the "Execution Date" and June 7, 2004, is obscure (as best we can determine, it was the date on which the district judge expected the parties to execute the settlement agreement) but not necessarily critical, because the deadline for reinstatement was extended by timely orders of the judge until January 28, 2005. That day came and went without reinstatement. Six months later Foley & Lardner moved the district court to order Engle to pay the firm money that he owed it under a "Master Payment Agreement" that they had made at the time of the settlement. That agreement required Engle to pay the firm $100,000 every three months for three years as consideration for the work it had done for him in the underlying litigation. With interest, the total due Foley & Lardner will amount, according to the law firm, to at least $1.8 million.

The court issued the order requested by Foley & Lardner, directing Engle to pay the firm $200,000 plus interest, and later issued a similar order directing him to pay a third

installment of $100,000. The judge based jurisdiction to issue these orders on her having retained jurisdiction to enforce the terms of the settlement, although the "Master Payment Agreement" was a discrete agreement and Foley & Lardner was not a party to the underlying litigation. Engle appeals from both orders, challenging the district court's jurisdiction.

There is a question of our jurisdiction as well—namely whether the orders are final. 28 U.S.C. § 1291. They direct the payment of the $100,000 installments "with interest," and undoubtedly the reference is to prejudgment as well as postjudgment interest (the latter does not affect, but rather presupposes, finality), since the Master Payment Agreement specifies that interest is to accrue at a specific rate from the date of the agreement. But the agreement is not dated, so the amount of interest due cannot be calculated from the existing record. Nor does the agreement say whether simple or compound interest is contemplated.

But finality must be distinguished from clarity. The test of finality is whether the district judge has finished with the case. *Chase Manhattan Mortgage Corp. v. Moore*, 446 F.3d 725 (7th Cir. 2006). It is not whether the judgment ending the case is clear enough to be enforced. If it is unclear, that is a basis for either party's challenging it on appeal, *Sweat v. City of Fort Smith*, 265 F.3d 692, 696 (8th Cir. 2001); *United States v. Terry*, 17 F.3d 575, 580 (2d Cir. 1994), but neither party is doing so. Probably they agree on what "with interest" means, though they have not bothered to tell us. All that matters, however, so far as finality and hence our jurisdiction is concerned, is that the district judge had thought herself finished with the case upon entering the orders.

So we have jurisdiction of the appeals and turn now to the question of the district court's jurisdiction. We have criti-

cized the practice of dismissing suits before they're really over. E.g., *Shah v. Intercontinental Hotel Chicago Operating Corp.*, 314 F.3d 278, 281 (7th Cir. 2002); *Goss Graphics Sytems, Inc. v. DEV Industries, Inc.*, 267 F.3d 624, 626 (7th Cir. 2001); *King v. Walters*, 190 F.3d 784, 786 (7th Cir. 1999); *Adams v. Lever Bros. Co.*, 874 F.2d 393, 396 (7th Cir. 1989). It is a potent source of confusion with no redeeming virtues in a case such as this in which the ripening depends on conditions (the signing of all agreements constituting the settlement and the exchange of the consideration required by the agreements) the fulfillment of which may require additional litigation. The judge should have waited before entering any order of dismissal until the various undertakings constituting the settlement were completed. Then the case would be over and dismissal with prejudice appropriate.

An even more serious problem is the conjunction of dismissal with prejudice with retention of jurisdiction to enforce the settlement agreement. We know from *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-81 (1994), that a district court does not have jurisdiction to enforce a settlement agreement merely because the agreement was the premise of the court's dismissal of the suit that the agreement settled. And therefore, as we explained in *Lynch v. SamataMason, Inc.*, 279 F.3d 487, 489 (7th Cir. 2002), a district judge cannot dismiss a suit with prejudice, thus terminating federal jurisdiction, yet at the same time retain jurisdiction to enforce the parties' settlement that led to the dismissal with prejudice. (An exception is the inherent power of a court that has issued an injunction, even if that injunction ended the lawsuit, to enforce it, as by contempt proceedings. E.g., *United States v. City of Chicago*, 870 F.2d 1256, 1257 (7th Cir. 1989).)

But this case is unusual because despite the reference in the minute order to June 7, 2004, it appears from the

judgment order itself that the judge's intention was to retain jurisdiction until the settlement—incomplete at the time that the order was made—was fully implemented; for the order retains jurisdiction to enforce the terms of settlement. If the judge was correct in thinking the Master Payment Agreement part of the settlement, then until Engle completes the payments required by it the settlement will not be final.

So here we have a concrete example of the confusion injected by the "springing" type of judgment entered in this case. By making the final judgment contingent on future events, the judge created a situation in which it might be (and turned out to be) uncertain when an appealable judgment was entered. One interpretation, supported by the minute order, is that the judgment became final on January 28, 2005, the extension of the June 7 date in the minute order of February 5, 2004. But another interpretation, supported by the judgment order, is that the judgment has not yet become final if the Master Payment Agreement is a part of the settlement, because if it is, the judgment will not be final until the agreement is carried out—that is, until Foley & Lardner is paid in full.

Normally the judgment order would take precedence over a minute order. The minute order states, however: "For further detail see order attached to the original minute order." The order referred to is the judgment order. So maybe rather than there being two inconsistent orders, one of which (the judgment order) should take precedence, there is a single, internally inconsistent order, in which event a remand might be necessary to enable the district court to clarify its meaning. *Alpern v. Lieb*, 38 F.3d 933, 935-36 (7th Cir. 1994); *United States v. Michaud*, 907 F.2d 750, 751, 753-54 (7th Cir. 1990) (en banc); *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1181 n. 28 (9th Cir. 2003). But in

all likelihood the reference to June 7 in the minute order was merely a guess and the judge would not have wanted to relinquish jurisdiction merely because the settlement was not finally agreed to by that date.

Some disputes between a litigant and his lawyer (or his opponent's lawyer) are within the federal courts' ancillary jurisdiction. See, e.g., *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1300-01 (7th Cir. 1995); *Novinger v. E.I. DuPont De Nemours & Co.*, 809 F.2d 212, 217 (3d Cir. 1987); *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982); *Valerio v. Boise Cascade Corp.*, 645 F.2d 699 (9th Cir. 1981) (per curiam). In *Baer*, for example, the provision relating to the lawyer's fee was an express part of the settlement agreement, and the court had moreover an independent legal duty to determine the reasonableness of the fee. (*Novinger* was similar: the court had a legal duty to consider the reasonableness of the contingent-fee contract between the plaintiffs and their lawyer.) In another of our cases, *Dale M. ex rel. Alice M. v. Board of Education*, 282 F.3d 984 (7th Cir. 2001), after we reversed the judgment for the plaintiff with directions to vacate the award of attorney's fees the plaintiff's lawyer, who had pocketed the fee, refused to return it to the defendant. We upheld the district court's power to order her to return it. The order was necessary to implement our judgment.

But if the Master Payment Agreement in this case was not a part of the settlement, Engle's compliance with it has no more federal significance than any routine postlitigation disagreement between lawyer and client. *Taylor v. Kelsey*, 666 F.2d 53 (4th Cir. 1981) (per curiam). And even if the Master Payment Agreement was part of the settlement, this would not automatically place disputes over the agreement within federal jurisdiction. The purpose of the ancillary

jurisdiction of the federal courts, well illustrated by *Dale M.*, is to enable a federal court to render a judgment that resolves the entire case before it and to effectuate its judgment once it has been rendered. *Peacock v. Thomas*, 516 U.S. 349, 355-59 (1996); *Kokkonen v. Guardian Life Ins. Co. of America, supra*, 511 U.S. at 379-80; *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994); *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 282 (4th Cir. 2002); *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 501 (6th Cir. 2000). It is not to enable a federal court to encroach on the jurisdiction reserved to the states merely because the parties would prefer to have a federal court resolve their future disputes (not necessarily future disputes between them, moreover—Foley & Lardner was not a party to Shapo's suit). The settlement agreement could not require that if one of the parties and his lawyer had a falling out, and the party sued the lawyer for malpractice in the litigation that was settled, the suit could be brought in the federal court even if the malpractice suit was not based on federal law and there was no diversity of citizenship. Parties cannot confer federal jurisdiction by agreement. *Hays v. Bryan Cave LLP*, 446 F.3d 712, 714 (7th Cir. 2006); *Wolf v. Cash 4 Titles*, 351 F.3d 1348, 1357 (11th Cir. 2003); *Presidential Gardens Associates v. United States ex rel. Secretary of Housing & Urban Development,* 175 F.3d 132, 140 (2d Cir. 1999). There would have to be special circumstances to allow a federal court to enforce such a requirement, such as an existing dispute between lawyer and client that if unresolved would preclude a settlement.

But the prior question is whether the Master Payment Agreement *was* a part of the settlement agreement. If it was not, there could be no argument that the suit by a lawyer for one of the parties against that party to collect his fee was ancillary to the original suit. The Supreme Court

rejected the invocation of ancillary jurisdiction in the *Peacock* case, where the plaintiff, having obtained a judgment he could not collect, sued a shareholder of the defendant on the ground that he was the defendant's alter ego. Yet that suit might have been thought an effort to effectuate the judgment for the plaintiff; a lawyer's suit for his fee could not be.

The district judge *assumed* that the Master Payment Agreement on which Foley & Lardner's fee claim was based was part of the settlement agreement, but she did not explain the basis of her assumption. It is true that the execution date was to be deferred until all related agreements were signed and that the Master Payment Agreement was a related agreement. Foley & Lardner had liens on some of the property that Engle was to transfer to the plaintiff in the underlying litigation as part of the settlement. The Master Payment Agreement released those liens in exchange for Engle's promise to pay the fees set forth in the agreement. The agreement recites that it is "made in connection with the settlement" and is "to facilitate the settlement." The judgment order does not postpone the execution date until the related agreements are performed, however, but only until they are signed. It was doubtless important to the settlement to get the liens cleared; but it is unclear whether Foley & Lardner would have refused to release them unless the district court agreed to enforce Engle's promise to pay the law firm's fees, that promise being the consideration for the release of the liens.

The order does, as we know, retain jurisdiction "to enforce the terms of the Parties' settlement," and it is at least arguable that those terms include the terms in the Master Payment Agreement, since "settlement" is not defined and could spread over multiple agreements. But the argument is not found in the district judge's orders enforcing the

agreement, and we cannot exclude the possibility that the judge mistakenly thought she could retain jurisdiction after dismissing the suit with prejudice. For nowhere does she state that the automatic conversion of dismissal without prejudice to dismissal with prejudice would not occur until Engle completed payment of the fees required of him by the Master Payment Agreement—which would take at least three years, and could take much longer. And nowhere does she explain why, had she refused to retain jurisdiction to enforce the Master Payment Agreement, the settlement would have fallen through. Foley & Lardner would have been in breach of its fiduciary duty to its client had it blocked settlement merely to obtain an advantageous forum in which to collect its legal fees if the client failed to pay them. See *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000); *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003); *Streber v. Hunter*, 221 F.3d 701, 725-26 (5th Cir. 2000). It seems anomalous to make a settlement obtained by a plaintiff depend on the resolution of a fee dispute between the defendant and his lawyer, a dispute to which the plaintiff is a stranger.

A remand will be necessary to enable the district judge to clarify the judgment.

At argument the question arose what a judge should do who wants to enter a final judgment in order to preclude further litigation of the same claim between the same parties, by operation of the doctrine of res judicata, but to retain jurisdiction over some incidental matter that may take years to resolve, in this case a fee agreement that is (if it is—a question for remand) a part of the settlement but not so large a part that it should prevent the judgment's having preclusive effect. The answer is that either the settlement should include a release of the plaintiff's claims, thus

barring relitigation of them, as in *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005); *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 580 (7th Cir. 2004); *Hoseman v. Weinschneider*, 322 F.3d 468, 477 (7th Cir. 2003), and *Gonzalez v. Kokot*, 314 F.3d 311, 316 (7th Cir. 2002), or the district court should state that judgment is being entered in order to allow the parties to enforce it and that the "without prejudice" language shall not allow them to reopen issues resolved by the judgment. See *Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 337-38 (7th Cir. 1969); *Wallace Clark & Co. v. Acheson Industries, Inc.*, 532 F.2d 846, 849 (2d Cir. 1976). Either course of action would achieve the preclusive goal of a final judgment without creating the paradox of a court's at once relinquishing jurisdiction by dismissing a suit with prejudice and retaining jurisdiction.

The orders are vacated and the case returned to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*