In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 23-3388 & 23-3110

PATRICE DANIELS, *et al.*,

*Plaintiffs-Appellants, Cross-Appellees*,

*v.*

LATOYA HUGHES, Acting Director of the Illinois
Department of Corrections, *et al.*,

*Defendants-Appellees, Cross-Appellants*.

Appeals from the United States District Court for the
Central District of Illinois.
No. 07-cv-1298 — **Michael M. Mihm**, *Judge*.

ARGUED JANUARY 22, 2025 — DECIDED AUGUST 8, 2025

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. This case began almost twenty years
ago with a *pro se* complaint asserting claims against officials
within the Illinois Department of Corrections ("IDOC") re-
lated to mental healthcare. With the help of counsel, this case
evolved into a class action, which settled in 2016 with an
agreement requiring the defendants to meet certain

benchmarks for mental-health treatment. The agreement provided for judicial enforcement until July 2020, later extended to July 2022 for a subset of the agreement's terms.

This appeal raises a dispute about one provision of the settlement agreement, which provided that $1.9 million in attorney's fees and costs would become immediately due to plaintiffs' counsel if the district court issued an order granting relief for violations of the agreement. In 2018, the district court issued such an order: an injunction requiring the defendants to address five areas of noncompliance.

While the defendants' interlocutory appeal of this order was pending, the parties reached two agreements regarding the $1.9 million in deferred fees. As a result of these agreements, IDOC paid $1.9 million into a trust account at Dentons US LLP, and Dentons disbursed the payment to plaintiffs' counsel. We conclude that under the terms of the parties' settlement agreement, as modified by their fee agreements, our decision vacating the district court's injunction does not require plaintiffs' counsel to return the payment.

In addition, this appeal concerns what remained of the underlying class-action claims after the district court's enforcement jurisdiction over the settlement agreement expired. The court neither dismissed those claims when it approved the settlement agreement nor when its enforcement jurisdiction expired by the agreement's own terms. Instead, after its enforcement jurisdiction expired, the court returned the case to its "active docket" and entertained an amended complaint, a motion to dismiss, and another amended complaint.

More than a year after the district court returned the case to its "active docket," the court *sua sponte* raised concerns

about its subject-matter jurisdiction over the underlying claims related to mental healthcare. It ultimately concluded that its jurisdiction over these claims ended when its jurisdiction to enforce the settlement agreement ended. But jurisdiction to enforce a settlement agreement and jurisdiction over underlying claims are separate issues. In this case, the district court's jurisdiction over the underlying claims turns on whether the settlement agreement moots those claims. We therefore vacate the district court's judgment and remand for the court to resolve the mootness question.

## I. Background

Ashoor Rasho filed a *pro se* complaint in the Central District of Illinois in November 2007, challenging the adequacy of mental healthcare provided to persons in IDOC's custody. The litigation grew into a class action against IDOC officials seeking declaratory and injunctive relief for failures to provide mental healthcare. In August 2015, the district court certified a class of persons in IDOC's custody who are "identified or should have been identified by IDOC's mental health professionals as in need of mental health treatment …." Rasho, Patrice Daniels, and other inmates served as class representatives. (IDOC has since released Rasho from its custody.)

After class certification, the parties reached an agreement regarding the plaintiffs' claims. In its introduction section, the parties' Amended Settlement Agreement (the version the district court approved) stated, "the parties … engaged in arms length settlement negotiations to resolve the claims raised by this action as set forth in Plaintiffs' Third Amended Complaint," and "Plaintiffs and Defendants … reached an agreement settling this litigation …."

This agreement required the defendants to meet certain benchmarks across more than a dozen areas of mental-health treatment. These requirements were judicially enforceable. The Amended Settlement Agreement provided that the parties "may jointly or individually seek relief from the Court to effect substantial compliance with the Settlement Agreement," and the court "may enter an order … that is designed to achieve compliance …." Under the terms of the agreement, "[t]he Court's jurisdiction" with respect to each provision would "terminate" on July 7, 2020, or, if "the Court determine[d] that Defendants are not in substantial compliance" with a given provision, a date no later than two years "from the date of the Court's finding that the Defendants are not in substantial compliance."

The Amended Settlement Agreement barred the plaintiffs from seeking relief for noncompliance through a petition for contempt and the district court from entering an order of contempt to achieve compliance. To address persistent noncompliance, the agreement instead provided for a return of the case to the district court's "active docket": It provided that if the parties were unable to resolve a dispute with respect to certain "budget contingent" obligations, "Plaintiffs may request that the Court return this case to the active docket." And it provided that "[i]f Plaintiffs contend that Defendants have not complied with an order" granting relief for violations of the agreement, the district court may "return[] the case to the active docket and set[] a trial date."

Finally, as relevant here, the agreement partially conditioned the plaintiffs' entitlement to attorney's fees on court-ordered relief. The agreement provided that half the "fees and costs due to Plaintiffs' counsel"—$1.9 million of the $3.8

million total, as the parties later agreed— would only be "due if the Court enters an order" granting relief for violations of the agreement. If the district court entered such an order, the $1.9 million would "become immediately due."

In May 2016, the district court entered an order approving the Amended Settlement Agreement. In its order, the district court explained that it found the agreement to be "a fair, reasonable, and adequate resolution of the claims," and that "this matter will remain on the Court's docket until the terms of the Settlement Agreement are met," at which point "this matter will be dismissed with prejudice."

The next year, the plaintiffs returned to court, seeking relief based on the defendants' alleged failure to meet the terms of the Amended Settlement Agreement in five areas: mental-health evaluations, treatment planning, medication management, crisis care, and segregation care. The district court held that the defendants had breached the agreement, which itself caused an Eighth Amendment violation. As relief, the court entered an injunction requiring the defendants to address the five areas at issue, to remain in effect for two years (until April 23, 2021). The defendants appealed the order, invoking our jurisdiction under 28 U.S.C. § 1292(a)(1).

The parties disagreed about the implications of the district court's decision for the $1.9 million in deferred fees due under the Amended Settlement Agreement "if the Court enters an order [granting relief for violations of the agreement]." In January 2020, while the defendants' appeal was pending, the parties took a step towards resolving this fee dispute, executing an agreement providing that the State of Illinois would issue a check for $1.9 million to the law firm Dentons, and Dentons would "not distribute any portion of the payment among

plaintiffs' counsel until either (a) the parties enter a written agreement that resolves their dispute about the $1.9 million payment, or (b) the Seventh Circuit affirms the district court's injunction, or otherwise confirms plaintiffs' right to the payment …." Alternatively, "[i]n the event of an order that determines that plaintiffs are not presently entitled to the $1.9 million," the agreement provided that Dentons would "return the $1.9 million to the State …."

A month later, IDOC's Chief Legal Counsel sent an email to a Dentons attorney involved in this litigation "confirm[ing] that the parties ha[d] reached an agreement that resolves their dispute about the $1.9 million payment" and "that the $1.9 million may be released from the Dentons US LLP trust account and distributed among plaintiffs' counsel." Dentons then released the payment.

Also while the defendants' interlocutory appeal of the injunction order remained pending, the parties filed—and the district court approved—a Corrected Second Amended Settlement Agreement. This version of the parties' agreement extended the district court's jurisdiction to enforce terms not subject to the injunction to April 23, 2021, the expiration date for the injunction. The district court subsequently granted an agreed motion for another extension of its jurisdiction to enforce certain terms, this time to April 23, 2022.

In January 2022, in *Rasho v. Jeffreys* ("*Rasho*"), 22 F.4th 703 (7th Cir. 2022), we reversed the district court's order granting an injunction and vacated the injunction.

Given *Rasho*, the defendants sought to reopen plaintiffs' counsel's entitlement to the $1.9 million payment. They filed a motion to recover the payment. The district court denied

this motion in September 2022, reasoning that the parties' agreements did not provide for return of the $1.9 million payment, regardless of whether the defendants prevailed on their interlocutory appeal of the injunction order. *Rasho v. Walker*, No. 07-1298, 2022 WL 10220204 (C.D. Ill. Sep. 13, 2022).

Meanwhile, the parties attempted to negotiate further extensions of the district court's jurisdiction over the Corrected Second Amended Settlement Agreement. The day after we issued *Rasho*, the parties filed a motion for the district court to extend its jurisdiction to enforce certain terms of the agreement by another three months, to July 22, 2022. The court granted the motion, which would be the last extension.

In June 2022, the parties filed a proposed plan for negotiations in the district court, explaining that they would attempt to negotiate "an agreed path forward … and resolve ongoing disputes regarding Plaintiffs' allegations that Defendants [were] not in substantial compliance with the [settlement agreement] and/or federal law." As part of these negotiations, the parties agreed to "discuss which aspects of the Settlement Agreement would continue past July 22, 2022, as part of a new consent decree and/or private settlement agreement." If they failed to reach agreement to resolve their disputes by July 22, they "agree[d] that this matter w[ould] be returned to the active trial docket."

The district court adopted and approved this plan in a minute entry. On July 20, 2022, in a telephone conference memorialized in another minute entry, the parties informed the district court that they were at an impasse in their negotiations. The next day, and in accordance with the plan proposed by the parties, the district court "returned the case to its active

docket for scheduling." *Rasho v. Walker*, No. 07-1298, 2022 WL 2872224, at *6 (C.D. Ill. July 21, 2022).

For the next year, the parties litigated the case. With leave of the district court, the plaintiffs filed a Fourth Amended Complaint in September 2022. The defendants responded with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the district court granted in part, while also granting the plaintiffs leave to file an amended complaint addressing deficiencies. The plaintiffs took up this opportunity in May 2023, filing a Fifth Amended Complaint. The defendants again responded with a motion to dismiss.

In September 2023, the district court *sua sponte* raised concerns about its subject-matter jurisdiction. The court entered an order staying all proceedings and requesting briefing on jurisdiction. The next month, after considering the briefs, the court dismissed all claims, reasoning that it lost subject-matter jurisdiction when its jurisdiction to enforce the parties' settlement agreement expired by the agreement's own terms (i.e., in July 2022 at the latest, and perhaps earlier because of possible defects in its orders extending its jurisdiction). *Daniels v. Jeffreys*, No. 07-CV-1298, 2023 WL 6978495 (C.D. Ill. Oct. 23, 2023), *motion for relief from judgment denied*, No. 07-CV-1298, 2023 WL 8881815 (C.D. Ill. Dec. 22, 2023).

Both parties filed appeals. The defendants challenge the district court's order denying their motion seeking repayment of the $1.9 million in deferred attorney's fees and costs. The plaintiffs challenge the district court's order dismissing this case for lack of subject-matter jurisdiction.

## II. Discussion

Lawsuits can end by an adjudication or by an agreement between the parties. A binding settlement agreement generally moots the underlying claims in the suit. *Selcke v. New England Ins. Co.*, 2 F.3d 790, 791–92 (7th Cir. 1993); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–62 (2016), *as revised* (Feb. 9, 2016). A federal court can nonetheless retain ancillary jurisdiction to enforce the agreement so long as the court has not "dismissed [the] suit with prejudice, thus terminating federal jurisdiction." *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–82 (1994). Alternatively, if the court embodies the parties' agreement in an injunction, the court has "inherent power … to enforce [the injunction and therefore the agreement], as by contempt proceedings." *Shapo*, 463 F.3d at 643.

The parties put much stock in our prior characterization of the settlement agreement in this case as a "consent decree" under the Prison Litigation Reform Act, 18 U.S.C. § 3626. *Rasho*, 22 F.4th at 707 n.2. The Prison Litigation Reform Act imposes remedial limitations on "consent decrees" in civil actions challenging prison conditions but exempts certain "private settlement agreements." 18 U.S.C. § 3626(c). For our purposes, however, the distinction between a consent decree and private settlement agreement (under the Prison Litigation Reform Act or otherwise) is largely irrelevant.

Even if a settlement agreement is enforceable as a judicial decree, rather than as a private agreement, the agreement "is to be construed for enforcement purposes basically as a contract …." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). This appeal involves two disputes, both of which turn at least primarily on questions about the proper

construction of the parties' settlement agreement for enforcement purposes. Where the distinction matters, we assume that the district court's order approving the settlement agreement amounts to a judicial decree embodying the agreement.

## A. Attorney's Fees

The May 2016 Amended Settlement Agreement made the defendants' obligation to pay $1.9 million in attorney's fees and costs to plaintiffs' counsel subject to a condition precedent: the district court entering an order granting relief for violations of the settlement agreement. The defendants argue that the district court's injunction order did not satisfy this condition precedent because *Rasho* vacated the injunction—and they seek repayment of the $1.9 million on this basis. Their argument is beside the point, however, if the January 2020 fee agreement modified the May 2016 Amended Settlement Agreement by changing the conditions triggering the $1.9 million payment to plaintiffs' counsel.

The parties' agreements are contracts, so state law governs our interpretation. *See United States v. City of Northlake*, 942 F.2d 1164, 1167 (7th Cir. 1991) (recognizing that "fundamental principles of contract interpretation under relevant state law apply when a court is presented with the task of interpreting" a settlement agreement or consent decree). Under Illinois law, which applies here, the interpretation of a contract presents a question of law. *Bowers Mfg. Co. v. Chi. Mach. Tool Co.*, 453 N.E.2d 61, 66 (Ill. App. Ct. 1983). We thus review the district court's interpretation of the parties' agreements de novo. *See Elusta v. City of Chicago*, 696 F.3d 690, 693 (7th Cir. 2012).

A "well-worn principle of contract law" provides that "the terms in a modification agreement will supersede conflicting

terms in the original agreement." *Large v. Mobile Tool Int'l, Inc.*, 724 F.3d 766, 772 (7th Cir. 2013) (collecting cases, including from Illinois). In this case, the May 2016 Amended Settlement Agreement specified one condition triggering an obligation to pay $1.9 million to plaintiffs' counsel: "the Court enters an order [granting relief for violations of the agreement]." The January 2020 fee agreement, however, specified two different conditions, connected by a disjunctive: "either (a) the parties enter a written agreement that resolves their dispute about the $1.9 million payment, or (b) the Seventh Circuit affirms the district court's injunction, or otherwise confirms plaintiffs' right to the payment …." Given the conflict between the agreements, the January 2020 fee agreement supersedes the May 2016 Amended Settlement Agreement.

The February 2020 agreement, as reflected in the email from IDOC's Chief Legal Counsel, satisfied the first condition in the January 2020 fee agreement and therefore properly triggered the $1.9 million payment.

The last question is whether the January 2020 fee agreement requires plaintiffs' counsel to return the $1.9 million payment given *Rasho*. The defendants point to the provision stating, "[i]n the event of an order that determines that plaintiffs are not presently entitled to the $1.9 million, Dentons will return the $1.9 million to the State …." This provision refers to Dentons, not plaintiffs' counsel. We therefore agree with the district court that this provision does not require plaintiffs' counsel to return the payment disbursed to them.

**B. Subject-Matter Jurisdiction**

Subject-matter jurisdiction is a court's "authority to adjudicate [a] claim in suit." *Arbaugh v. Y&H Corp.*, 546 U.S. 500,

511 (2006). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. This requirement "demand[s] that 'an actual controversy ... be extant'" through all stages of federal judicial proceedings. *Campbell-Ewald*, 577 U.S. at 160 (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997)). To invoke federal-court jurisdiction, a plaintiff must "demonstrate a 'personal stake' in the suit." *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). If an intervening circumstance deprives the plaintiff of a legally cognizable interest at any point during the litigation, the action becomes moot—and no longer a "Case" or "Controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 726–27 (2013); *Campbell-Ewald*, 577 U.S. at 160–61.

At the inception of this case, Rasho invoked the district court's jurisdiction by asserting in his November 2007 *pro se* complaint claims under 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–34; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. In the Third Amended Complaint, with counsel's help, the plaintiffs asserted claims under the same federal laws. Neither the parties nor the district court entered a voluntary dismissal order relinquishing the court's jurisdiction over these claims. *See* Fed. R. Civ. P. 41(a) (providing for voluntary dismissal). So the question is whether intervening circumstances—namely, the parties' settlement agreement—moots those claims.

A binding settlement agreement generally moots a case. *See Selcke*, 2 F.3d at 791–92; *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 469–70 (5th Cir. 2020) (en banc); *Serta Simmons Bedding, LLC v. Casper Sleep Inc.*, 950 F.3d 849, 852–53 (Fed. Cir. 2020) (collecting cases); 13B Wright &

Miller's Federal Practice & Procedure § 3533.2 (3d ed. May 2025 update). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, [a] case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). When a settlement agreement resolves all claims against all parties, there is no longer a controversy between the parties about the plaintiffs' legal rights.

A complication is that parties can unilaterally or mutually rescind a settlement agreement. "If non-performance of a contract term constitutes a material breach, the non-breaching party … may have a right to rescind the settlement agreement and recommence litigation." *Serta*, 950 F.3d at 853 n.4; *see Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 942–43 (Ill. App. Ct. 2010) (describing the elements of a claim for recission). Alternatively, "[p]arties are free to abrogate, change, modify, or substitute a primary contract with their mutual assent …." *Large*, 724 F.3d at 772; *see also Wells Fargo Bus. Credit v. Hindman*, 734 F.3d 657, 670 (7th Cir. 2013) (distinguishing unilateral and mutual rescission).

When a court has embodied the settlement agreement in a judicial decree, Federal Rule of Civil Procedure 60(b) governs modifications. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992); *Balark v. City of Chicago*, 81 F.3d 658, 662 (7th Cir. 1996). That Rule provides that "[o]n motion and just terms, the court may relieve a party … from a final judgment, order, or proceeding for" five enumerated reasons or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Relief under the Rule 60(b)(6) catchall "requires extraordinary

circumstances." *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025).

Some courts have held that the breach or repudiation of a settlement agreement can justify Rule 60(b)(6) relief from a final judgment premised on that agreement. *See Keeling v. Sheet Metal Workers Int'l Ass'n*, 937 F.2d 408, 410 (9th Cir. 1991); *United States v. Baus*, 834 F.2d 1114, 1124 (1st Cir. 1987); *Fairfax Countywide Citizens Ass'n v. Fairfax County*, 571 F.2d 1299, 1302–03 (4th Cir. 1978); *see also Kokkonen*, 511 U.S. at 378 (acknowledging these cases without expressing a view on the issue). This court "has suggested in dicta that it would follow the same rule." *Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 954 (7th Cir. 1997) (first citing *McCall–Bey v. Franzen*, 777 F.2d 1178, 1183–84, 1186 (7th Cir. 1985); and then citing *United States v. Mt. Vernon Memorial Ests., Inc.*, 734 F.2d 1230, 1235 (7th Cir. 1984)).

The settlement agreement executed by the parties and approved by the district court in May 2016 purported to "resolve the claims raised by this action as set forth in Plaintiffs' Third Amended Complaint." Subsequently, however, the parties also agreed to return this case to the district court's "active trial docket," the court indeed returned the case to its active docket, and the parties litigated this case for more than a year (from July 2022 to September 2023) without the parties or the court raising the settlement agreement as a barrier.

In this context, we are unsure whether the parties' settlement agreement moots some or all of the plaintiffs' claims related to the adequacy of mental healthcare provided to persons in IDOC's custody. As part of the settlement agreement, did the parties waive their right to litigate these claims? If not, what did they intend with respect to these claims?

The district court reasoned that the parties waived their right to litigate these claims because of our prior characterization of their settlement agreement as a "consent decree" under the Prison Litigation Reform Act, *Rasho*, 22 F.4th at 707 n.2; and the Supreme Court's description of consent decrees as agreements under which parties "waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation," *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).

The question in *Armour*, however, was whether a consent decree between a meat packer and the government in an antitrust case, which prohibited the meat packer from dealing in certain commodities, prohibited a corporation that dealt in some of those commodities from acquiring the meat packer. *Id*. at 673–74. The government argued that allowing the acquisition would thwart the purpose of the consent decree. *Id*. at 680–81. The Supreme Court rejected the premise that consent decrees have a purpose, holding that because a consent decree "normally embodies a compromise"—"the parties each give up something they might have won had they proceeded with the litigation"—"the decree itself cannot be said to have a purpose" and "the scope of a consent decree must be discerned within its four corners …." *Id*. at 681–82.

In this context, *Armour* stands for the proposition that because consent decrees embody contracts, they "[are] to be construed for enforcement purposes basically as a contract[s] …." *ITT Cont'l Baking*, 420 U.S. at 238. Accordingly, our prior characterization of the settlement agreement as a "consent decree" is not dispositive of whether the parties in this case waived their right to litigate the underlying claims, such that the settlement agreement deprives the plaintiffs of a legally

cognizable interest in the outcome of those claims. Rather, that question turns on principles of contract interpretation.

We think the interpretation of the settlement agreement, and ultimately the mootness issue, needs to be resolved in the district court in the first instance, with the benefit of adversarial presentation. The district court is free to order discovery on remand and hold a hearing, if it deems it appropriate. We leave the procedures to the district court's sound discretion. Its thorough understanding of the record will help guide the resolution of the mootness issue.

Even if the district court determines on remand that the settlement agreement contains a waiver of the parties' right to litigate the underlying claims (or otherwise moots the claims), this will not necessarily resolve the mootness issue. If the parties agreed to modify or rescind the settlement agreement when they agreed to return this case to the district court's "active trial docket," this could justify Rule 60(b)(6) relief from a judicial decree embodying the settlement agreement. Neither party moved for Rule 60(b)(6) relief below, and the district court did not construe their request to return the case to its active docket as a request for Rule 60(b)(6) relief. On remand, however, the parties and the district court may consider this avenue for litigating the underlying claims.

\*     \*     \*

We therefore VACATE the judgment of the district court and REMAND for the court to determine whether the parties' settlement agreement moots the underlying claims and any further proceedings consistent with this opinion. We AFFIRM the court's denial of the defendants' motion to reopen plaintiffs' counsel's entitlement to the $1.9 million payment.