# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2673

SAMUEL LARGE,

*Plaintiff*,

*v.*

MOBILE TOOL INTERNATIONAL, INC.,
MTI INSULATED PRODUCTS, INC.,
TECO, INC., AND OCET, INC.,

*Defendants.*

MOBILE TOOL INTERNATIONAL, INC.,
AND MTI INSULATED PRODUCTS, INC.,

*Third-Party Plaintiffs-Appellees*,

*v.*

DAVIS H. ELLIOT COMPANY, INC.,

*Third-Party Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:02-CV-00177-WCL-RBC—**William C. Lee**, *Judge.*

ARGUED APRIL 23, 2013—DECIDED JULY 29, 2013

Before RIPPLE and HAMILTON, *Circuit Judges,* and STADTMUELLER, *District Judge.*[*]

STADTMUELLER, *District Judge.* On June 19, 2000, Samuel Large was injured while operating a bucket truck, which his employer, Davis H. Elliot Company (Elliot) had leased from TECO, Inc. (TECO), the manufacturer of the truck. Mr. Large thereafter sued TECO; TECO's successor-in-interest, appellee Mobile Tool, Inc. (Mobile); and several other related parties. Mobile then filed a third-party complaint against Elliot, seeking defense and indemnification against Mr. Large's complaint, pursuant to the lease contract between Elliot and TECO, which Mobile had assumed by purchasing TECO and its assets. Eventually, after the district court denied Mobile's first request for summary judgment on the defense and indemnification issue, Mobile settled with Mr. Large without Elliot's participation. That settlement left Mobile's third-party complaint against Elliot as the only outstanding issue. However, after a change in controlling law, Mobile filed a second request for summary judgment, which the district court granted, holding Elliot responsible to defend and indemnify Mobile against Mr. Large's claims. Elliot timely appealed the district court's summary judgment ruling. For the reasons set forth below, we affirm.

---

[*] The Honorable J.P. Stadtmueller of the Eastern District of Wisconsin, sitting by designation.

## I. Background

Elliot is a Virginia corporation that provides electrical construction and maintenance services. In connection with their business, Elliot owns, leases, and rents a number of bucket trucks. In 1996, Elliot entered into one such lease (the Lease) with TECO, an Indiana corporation. Pursuant to the terms of the Lease, Elliot agreed to release, indemnify and hold TECO harmless from and against

> (a) Any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from injury to person or property resulting from or based upon the actual or alleged use, operation, delivery or transportation of the Vehicle or its location or condition, and shall at its own cost and expense, defend any and all such suits which may be brought against [TECO], either alone or in conjunction with others upon any such liability or claims and shall pay and discharge any and all judgments and fines that may be recovered against [TECO] in any such action or actions; provided, however, that [TECO] shall give [Elliot] written notice of any such claim or demand.

> (b) Any and all losses, damages, costs and expenses incurred by [TECO] or [its] insurance agency because of (1) injury or damage sustained by any occupant of said Vehicle, including without limitation [Elliot], his employees, agents, or representatives, or (2) loss or damage to cargo or property owned by or in the possession of [Elliot], his employees, agents or representatives.

(c) All loss, damage, cost and expense resulting from [Elliot's] violation of any term of this agreement or breach of [Elliot's] warranties as expressed herein.

(d) Loss or damage to the Vehicle during the rental period for any reason.

In 1999, Mobile acquired a number of TECO's assets, including the Lease in question. Mobile then began to send out a form invoice (the Invoice) to Elliot each month. The invoice contained a separate indemnification clause, providing that

[Elliot] acknowledges that serious injury or death may occur to persons using or near personnel lifting units which are improperly operated or maintained.

[Elliot] by accepting delivery of a serviced unit and/or parts supplied hereunder, thereby acknowledges possession of all service and maintenance manuals for that unit or units. [Elliot] expressly warrants, covenants and agrees that (i) all persons using or servicing the unit or units described therein shall be adequately and thoroughly instructed in the proper use and maintenance of said units and shall be provided with copies of service and maintenance manuals, which shall be readily accessible to said persons at all times, one copy of which shall be kept with the unit, and (ii) the units will at all times be used as directed by [Mobile] in the manuals or elsewhere. [Elliot] shall require that the agreement in the preceding sentence shall be included in any agreement for the sale or use by other persons of any one or all of the units and/or parts described in

this instrument, which agreement shall be written for the benefit of [Elliot] and [Mobile] alike.

[Mobile] shall in no way be liable for any losses, costs, forfeiture, or damages including loss of profits, liability of Buyer to its customer or third persons, liability of [Mobile] to its customers, employees or third-persons and incidental or consequential damages whether direct or indirect arising from or contributed to by the failure of [Elliot] to comply with the requirements of the preceding grammatical paragraph, unless due solely to the fault or negligence of [Mobile], even though there may also have been some contribution thereto by fault or negligence of [Mobile], its agents, employees and contractors, and [Elliot] agrees to hold [Mobile] harmless and indemnify [Mobile] from any and all claims or causes of action, damages, judgments or from whatever other causes, arising in connection with the use or maintenance of the units or any of them and arising from or contributed by the failure of the Buyer to comply adequately with the terms of the preceding grammatical paragraph.

Shortly after Mobile's acquisition of the Lease, on June 19, 2000, Mr. Large was injured while operating a bucket truck covered by the Lease and Invoice. Mr. Large sued TECO and Mobile (as well as other related parties), for negligent design and manufacture, product liability, and breach of express and implied warranties.

On April 7, 2004, Mobile filed a third-party complaint against Elliot, requesting that Elliot be required to provide defense and indemnification to Mobile under

the terms of the Lease. Mobile also alleged breach of contract against Elliot, due to Elliot's failures to defend Mobile and to provide insurance to TECO. The district court denied Elliot's motion to dismiss the third-party complaint on February 22, 2005. Later in 2005, Mobile and Elliot filed cross motions for summary judgment, both of which the district court denied on December 15, 2006.

Given Elliot's refusal to defend or indemnify, Mobile eventually settled with Mr. Large. Elliot did not participate in the negotiation of the settlement. Pursuant to the settlement, the district court dismissed Mr. Large's action against Mobile, TECO, and the other related parties, leaving open only Mobile's third-party complaint against Elliot.

Due to intervening changes in Virginia law (which controls in this diversity case), Mobile and Elliot requested and were granted an opportunity to again brief motions for summary judgment on Mobile's request for defense and indemnification.

This time around, the district court agreed with Mobile, and held that Elliot was required to defend and indemnify Mobile pursuant to the terms of the Lease. In so deciding, the district court ruled that the indemnification language in the Invoice did not supersede the indemnification language in the terms of the original Lease. Thus, according to the district court, the terms of the Lease controlled, requiring Elliot to defend and indemnify Mobile.

Given Elliot's obligation to defend and indemnify Mobile, which Elliot failed to respect, the district court

granted judgment in satisfaction of Mobile's claims in the amount of $4,325,903.00, plus interest. It later docked that amount by $94,619.51, which was attributable to attorney fees Mobile had spent to defend against a sanctions issue.

Thus, on December 1, 2011, the district court entered final judgment on the third-party complaint in favor of Mobile, awarding $4,231,283.49. Elliot timely appealed the judgment, which is now before us.

## II. Discussion

Elliot makes only one primary argument on appeal: that the district court erred in concluding that the Lease—as opposed to the later Invoice—controlled, requiring Elliot to defend and indemnify Mobile. Elliot asserts that the Invoice superseded the terms of the Lease, thus eliminating Elliot's duty to defend and indemnify except in the case that Elliot violated its obligations under the terms of the Invoice by failing to either adequately train Mr. Large in the use of the bucket truck or to provide him with copies of the truck's operation and maintenance manuals. After reviewing Elliot's arguments, we find them to be unconvincing, and therefore affirm the district court's ruling.

## A.  Standard of Review and Choice of Law

We review the district judge's interpretation of the parties' contracts *de novo*. *Elusta v. City of Chicago*, 696

F.3d 690, 693 (7th Cir. 2012) (citing *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002)).

Furthermore, in interpreting the parties' contracts, we must apply Virginia law. The district court did so correctly applying the Indiana's choice-of-law jurisprudence. *Erie v. Tompkins*, 304 U.S. 64, 78 ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Indiana law compels use of the "most intimate contacts" test to determine which state's law applies in contract actions. *See, e.g.*, *Kentucky Nat'l Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010) (citing *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 232 (Ind. Ct. App. 1997)). In applying the most intimate contacts test, courts must consider the following factors: "(1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties," giving the greatest weight to the fourth of those factors. *Kentucky Nat'l Ins. Co.*, 919 N.E.2d at 575 (citing *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024–25 (Ind. Ct. App. 1999); *Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)). We find that each one of those factors is either inapposite or favors application of Virginia law. At least one party (Elliot) was incorporated in and operated from Virginia during contracting, negotiation, and performance. More importantly, the bucket

truck and the occurrence of the accident were both located in Virginia, meaning that the most important factor—location of the subject matter of the contract—clearly favors application of Virginia law. Therefore, the Court determines that Virginia's body of contract law should apply here.

### B. The original Lease controls, requiring Elliot to defend and indemnify Mobile against Mr. Large's claims

Elliot spends much of the space in its briefs elucidating the meaning of the Invoice's indemnity provisions. But that line of argument misses the forest for the trees. Indeed, we need not concern ourselves with the meaning of the Invoice's indemnity provision at all if we determine that the much broader indemnity provisions in the original Lease remained in effect at the time of Mr. Large's accident. In fact, Elliot does not even suggest that it would not be liable if we were to determine that the Lease provision remained in effect. Nor could it—the Lease's indemnity provision is very broad, clearly requiring Elliot to defend and indemnify Mobile against claims like Mr. Large's. Thus, Elliot's entire argument rests upon an exceedingly shaky foundation. For Elliot to prevail, we must first find that the Invoice's indemnity provision superseded the Lease's indemnity provision, such that only the Invoice would be operational.

To begin, there can be no dispute that Lease's terms remained in effect at the time of Mr. Large's accident,

although those terms may have been varied slightly by the Invoice. Parties are free to abrogate, change, modify, or substitute a primary contract with their mutual assent; in such a case, the original contract will remain in force, except to the extent modified by any new agreement. *See, e.g.*, 17A Am. Jur. 2d Contracts § 500; Restatement (Second) of Contracts § 279 (1981); *Amchem Prods., Inc. v. Newport New Circuit Court Asbestos Cases*, 563 S.E.2d 739, 743–44 (2002) (finding that a letter sent after the initial contract modified the original contract's terms). The parties need not manifest their assent in written form, but may instead manifest their mutual assent through their acts. *See, e.g.* 17 Am. Jur. 2d Contracts § 34; Restatement (Second) of Contracts §§ 19, 279 (1981); *Wells v. Weston,* 326 S.E.2d 672, 676 (Va. 1985) (meeting of the minds can be established by a non-written manifestation of mutual assent). Thus, here, where the Invoice contained reference to the parties' initial Lease contract (listed as Contract 2208) and Elliot continued to uphold its obligations under the initial Lease even after receiving a number of copies of the Invoice, we are obliged to find that the parties mutually assented to maintain their original contract, but with the modifications to the Lease's terms as set forth in the Invoice.[1] In other words, the Lease's terms

---

[1] Elliot cites to *Kennedy v. Kennedy*, No. CL-2006-14898, 83 Va. Cir. 439, 2011 WL 8947419, at *1–*2 (Oct. 12, 2011) for the proposition that the Invoice should entirely supersede the Lease. That case, however, is entirely inapplicable to this

(continued...)

carried on past the issuance of the Invoice, but the Invoice's terms became subsumed in and thus modified the Lease's terms to some extent.

The crux of the matter is *how*, precisely, or to what extent the Invoice modified the terms of the Lease. More specifically, we must determine whether the Invoice's indemnity provisions superseded the Lease's indemnity provisions. The Invoice provides that its terms "shall control over any conflicting provisions in other documents." In effect, however, that language is merely an adoption of the well-worn principle of contract law that the terms in a modification agreement will supersede conflicting terms in the original agreement. *See, e.g.*, 17A Am. Jur. 2d Contracts § 500 (citing *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798 (7th Cir. 2000) (construing Idaho law)); 17A C.J.S. Contracts § 574 (citing *Hill v. Ricoh Americas Corp.*, 603 F.3d 766 (10th Cir. 2010); *McLemore v. Hyundai Motor Mfg. Alabama, LLC*, 7 So. 3d

---

(...continued)

circumstance. In *Kennedy*, the court found that a new agreement "completely covering the same subject-matter, but containing terms which are inconsistent with those of the earlier contract" entirely superseded the prior contract. *Id.* Here, on the other hand, the Invoice did not "completely cover" the same subject matter. Instead, it covered only a handful of terms that had been previously settled upon in the more-extensive Lease. Therefore, the Court cannot adopt Elliot's argument that the Invoice should be held to entirely supersede the Lease. Instead, as discussed above, it is appropriate to treat the Invoice as if it merely supplemented the Lease's terms.

318 (Ala. 2008); *Atlanta Integrity Mortg., Inc. v. Ben Hill United Methodist Church*, 650 S.E.2d 359 (Ga. 2007); *Aon Corp. v. Utley*, 863 N.E.2d 701 (Ill. 1st Dist. 2006); *Blair Const., Inc. v. McBeth*, 44 P.3d 1244 (Kan. 2002); *Blumenstock v. Gibson*, 811 A.2d 1029 (Pa. Super. Ct. 2002); *Midwest Medical Supply Co., L.L.C. v. Wingert*, 317 S.W.3d 530 (Tex. App. Dallas 2010); *Durand v. HIMC Corp.*, 214 P.3d 189 (Wash App. Div. 2 2009)). So, then, the real question that we are called upon to answer is whether the Invoice's indemnity provision conflicts with the Lease's indemnity provision, such that the Invoice's provision should control over the Lease's provision.

The two provisions do not conflict with one another, and therefore the Lease's indemnity provision remained in effect at the time of Mr. Large's accident. Certainly, both provisions relate to Elliot's duty to defend and indemnify Mobile. The two provisions differ, though, in that they appear to touch upon separate occasions when the duty to defend and indemnify arises. The Lease provision imposes a duty when a claim arises from "the actual or alleged use, operation, deliver, or transportation of the" bucket truck. The Invoice provision, on the other hand, imposes a duty when a claim arises from the failure to provide maintenance or proper training. We find that these two provisions actually harmonize very well with one another, as opposed to conflicting. The original Lease set forth a broad duty to defend and indemnify in situations arising primarily from use and operation of the bucket truck; the Invoice expanded that duty further to situations before use and operation—namely training

and maintenance. On the plain language of these provisions, we must conclude that they do not conflict with one another.

This is particularly true given that "[w]hen two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done. *See, e.g.*, *Plunkett v. Plunkett*, 624 S.E.2d 39, 42 (Va. 2006); *Hutchison v. King*, 145 S.E.2d 216, 220 (1965); *Ames v. American Nat'l Bank*, 176 S.E. 204, 217 (Va. 1934). Here, reading the two provisions as supplementing one another respects their plain terms without doing violence to either, as is also required by Virginia contract law. *See, e.g.*, *Ames*, 176 S.E. at 217; *Bridgestone/Firestone v. Prince William Square Assocs.*, 463 S.E.2d 661, 664 (Va. 2008); *D.C. McClain, Inc. v. Arlington County*, 452 S.E2d 659, 662 (Va. 1995).

## III. Conclusion

For these reasons, we conclude that the district court was correct in determining that Elliot was required to defend and indemnify Mobile against Mr. Large's claims, and accordingly we AFFIRM that decision.